Mikael **SALOVAARA**, individually and derivatively on behalf of South Street Leveraged Corporate Recovery Fund, L.P., et al., Plaintiffs,

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY,** et al., Defendants.

No. Civ.A. 97–1422(GEB).

United States District Court, D. New Jersey.

July 1, 1999.

Joseph L. Buckley, Richard H. Epstein, Sills, Cummis, Radin, Tischman, Epstein & Gross, Newark, NJ, for Plaintiffs.

Forrest B. Lammiman, Lord, Bissell & Brook, Chicago, IL, for Jackson National Life Insurance Company.

Kevin N. Starkey, Anderson, Kill & Olik, New York City, of counsel for Jackson National Life Insurance Company.

Richard A. Edlin, Solovay, Edlin & Eiseman, New York City, for Lazard Freres & Co. LLC.

Thomas G. Rafferty, Rowan D. Wilson, Cravath, Swaine & Moore, New York City, of counsel for Lazard Freres & Co. LLC.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court on two separate motions to dismiss the complaint filed by Defendants Jackson National Life Insurance Company ("Jackson") and Lazard Freres & Co. LLC ("Lazard"). Plaintiffs submitted opposition to the motions. The Court reviewed the written submissions and conducted oral argument on June 21, 1999. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C.A. § 636 and FED.R.CIV.P. 73 for the dispositive motion practice. For the reasons that follow, both motions to dismiss the complaint are granted.

## I. *INTRODUCTION*

On March 4, 1997, Plaintiff, Mikael Salovaara, individually and derivatively, on behalf of South Street Leveraged Corporate Recovery Funds, L.P., South Street Leveraged Corporate Recovery Fund I, L.P., SSP Partners, L.P., SSP Advisors, L.P., and SSP, Inc. (collectively, the "South Street Funds"), filed this action against Jackson National Life ("Jackson"), a company organized under the laws of the State of Michigan. The South Street Funds are limited partnerships and a corporation, organized and existing under the laws of the State of Delaware, with their principal places of business in Wilmington, Delaware. SSP Advisers, L.P. and SSP Partners, L.P. are collectively referred to herein as "SSP LPs." The SSP LPs and SSP Inc. are also named as nominal defendants, but no relief is sought. On March 1, 1999, the Court entered an order granting leave to Plaintiffs to file a third amended complaint (the "complaint") joining Lazard as a Defendant. Plaintiffs essentially allege that Jackson concealed and failed to disclose material information concerning the value of certain debt securities to the South Street Funds, and that Jackson was under a duty to disclose such information to Plaintiffs. As a result of Jackson's fraudulent conduct, the South Street Funds argue deceptive inducement into selling the debt securities to Jackson at an artificially low price, approximately 94% of par. Plaintiffs allege that, while acting as the South Street Funds's agent in connec-

tion with the sale of the debt securities to Jackson, Lazard failed to disclose the true market value of the debt securities. Additionally, Lazard failed to disclose that it provides valuation services to Jackson. Jackson and Lazard have now filed motions to dismiss, but based on different grounds.

## A. *Background*

The SSP LPs are general partners of the South Street Funds. Mr. Salovaara and Alfred C. Eckert, III own, or control with others, all of the equity in the SSP LPs. Using the SSP LPs, Mr. Salovaara and Mr. Eckert invested in the South Street Funds. SSP, Inc., the ultimate general partner to the South Street Funds, is a corporation owned entirely and equally by Mr. Salovaara and Mr. Eckert. SSP Inc. is also the general partner of the SSP LPs. Mr. Eckert is a director of SSP, Inc.; Mr. Salovaara is not. Gary Hindes and Denise Hindes (the "Hindeses") were also SSP, Inc. officers. By January 1996, Mr. Eckert and the Hindeses controlled SSP, Inc. and precluded Mr. Salovaara from participating in the management of the South Street Funds.

While the parties to this action are familiar with one another though their involvement in numerous actions pending before various courts (*see infra* at 596, 602–03; Jackson Br. at 6; Pl.Br. in Opp'n to Jackson Br. at 6), the instant action arises from a specific transaction (the "Sale") in which Jackson purchased approximately $52,000,000 in Bucyrus–Erie International, Inc. ("Bucyrus") debt securities (the "Debt Securities") from the South Street Funds on March 4, 1996. In February 1996, SSP, Inc., under the control of Mr. Eckert and the Hindeses, decided to sell the Debt Securities through Lazard at a price of approximately 93% of par to Jackson. (Compl.¶ 32.) Lazard was to receive 1% as the broker dealer handling the transaction. (*Id.*) Mr. Salovaara objected vehemently and sought to enjoin SSP, Inc. from selling the Debt Securities, arguing

that 93% of par did not reflect the true market value of the Debt Securities. (*Id.* at 33.) The District Court for the Southern District of New York denied Mr. Salovaara's request for preliminary relief. (*Id.*)

Lazard acted as an agent for the South Street Funds and negotiated with Jackson in connection with the Sale. (Lazard Br. at 2; Pl.Br. in Opp'n to Lazard Br. at 12.) Plaintiffs allege that Lazard provided an oral opinion to the South Street Funds representing that the price for the Debt Securities was a fair and reasonable market value. (Pl.Br. in Opp'n to Lazard Br. at 13.) The complaint alleges that in providing the oral opinion, Lazard failed to disclose its conflicting Lazard Market Value Opinion and that Lazard provided market valuation services to Jackson. (*See* Compl. ¶ 55.) As a result of the Sale, Lazard took a fee from the South Street Funds of no less than $500,000. (*Id.* ¶ 56.)

As part of the Sale, on February 28, 1996, the South Street Funds and Lazard entered into an indemnification agreement (the "Indemnification Agreement"). (Lazard Br. at 4.) The forum selection clause of the Indemnification Agreement provides that:

> This agreement and any claim related directly or indirectly to this agreement (including any claim concerning advice provided pursuant to this agreement) shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York.

(*See* Harasymiak Aff. Lazard Ex. A & B at 2–3.)

Mr. Salovaara commenced an action against the Hindeses, (the "*Hindes* ac-

tion") on or around May 2, 1996. The Hindes action, Jackson alleges, is a "mirror image of the present action, in that Mr. Salovaara ... asserts claims against the South Street principals who were the *sellers* of the [Debt Securities]." (Jackson Br. at 7, (emphasis in original); *see also* Starkey Aff.Ex. 3, Complaint, Civ. No. 96-3203(AKH) *Mikael Salovaara v. Gary Hindes and Denise Hindes.*)

On October 23, 1997, Jackson filed a motion to dismiss the complaint filed here and a motion to transfer this case to the United States District Court for the District of New York. On November 21, 1997, this Court granted Jackson's motion to transfer, without deciding the motion to dismiss. On June 3, 1998, the Honorable Kimba Wood of United States District Court for the District of New York *sua sponte* transferred the case back to the District of New Jersey, holding that it should not have been transferred to that jurisdiction and that it should not be consolidated with any pending litigation in that district. (*See* Pl.Br. in Opp'n to Lazard motion at 14.) On July 30, 1998, the Court denied Jackson's motion to dismiss, which had been filed on October 23, 1997.

### B. *Jackson's Motion to Dismiss*

Jackson argues that Plaintiffs' claims against Jackson for violations of sections 10(b) of the Securities and Exchange Commission Act of 1934 (the "Exchange Act") and 10b–5 of the General Rules and Regulations under the Act in Count I should be dismissed. Jackson argues that Plaintiffs failed to identify "any basis for the allegation that Jackson had a duty to disclose information about Bucyrus to the South Street Funds." (Jackson Br. at 9.) Similarly, Jackson argues that Plaintiffs' claim for common law fraud in Count III should be dismissed because Plaintiffs failed to allege any facts showing that Jackson had a " 'duty to speak' so as to make Jackson's alleged concealment of material facts fraudulent." (Jackson Br. at 13.) Jackson further argues that, under Rule 23.1 of the

Federal Rules of Civil Procedure, Mr. Salovaara cannot adequately and fairly represent Plaintiffs derivatively. Finally, Jackson argues that Mr. Salovaara's claims should be dismissed to the extent that they purport to be brought by him individually, not merely derivatively on behalf of the South Street Funds. At oral argument, Plaintiffs agreed to a voluntary dismissal of Mr. Salovaara's individual claims against Defendants.

In opposition to Jackson's motion, Plaintiffs argue that the complaint states a claim for insider trading against Jackson, even though the Debt Securities bought by Jackson on the basis of undisclosed inside information constituted *debt* rather than *equity*. Plaintiffs further argue that the complaint states a claim for fraud under New Jersey law. Plaintiffs base their common law fraud allegation on Jackson's alleged duty of disclosure to Plaintiffs. Additionally, Plaintiffs argue that Mr. Salovaara satisfies the representation requirements for derivative plaintiffs because: he has demonstrated an intent to prosecute this action vigorously; he has competent legal counsel; and he has not demonstrated antagonism with the South Street Funds, and its limited partners, with regard to how to prosecute this case. *See* Fed.R.Civ.P. 23.1.

### C. *Lazard's Motion to Dismiss*

Lazard seeks to dismiss Counts II, IV and V of the complaint pursuant to Fed. R.Civ.P. 12(b)(6). Alternatively, Lazard moves to dismiss the claims against it pursuant to Fed.R.Civ.P. 12(b)(3). Lazard argues that, under a forum selection clause in the Indemnification Agreement, the South Street Funds are contractually obligated to resolve any and all disputes with Lazard, involving the Sale, in either the District Court of the Southern District of New York or the state courts of New York City and County. Lazard further argues that, although Mr. Salovaara purports to bring his claims individually and derivatively, the complaint does not contain alle-

gations relating to Mr. Salovaara's alleged individual claims. As noted *supra* at 597, Plaintiffs have voluntarily dismissed Mr. Salovaara's individual claims. Because the South Street Funds' claims are governed by the Indemnification Agreement, Lazard argues, its claims against Lazard should be dismissed by this Court.

Plaintiffs oppose Lazard's motion arguing that the Indemnification Agreement does not cover the allegations set forth in the complaint. They construe the Indemnification Agreement narrowly arguing that, by its terms, the agreement is limited to disputes arising from indemnification claims. Plaintiffs further argue that Lazard's motion is not a motion to dismiss, but rather a motion to transfer. Should the Court treat Lazard's motion as a motion to transfer, Plaintiffs argue that transfer is not warranted because a transfer to the District of New York would result in duplicative litigation and potentially inconsistent results.

## II. *DISCUSSION*

### A. *Rule 12(b)(6) Standard*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief. *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986). In setting forth a valid claim, a party is required only to plead "a short plain statement of the claim showing that the pleader is entitled to relief." *See* FED.R.CIV.P. 8(a). The Court may not dismiss a count in the complaint unless the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## B. *Jackson's Motion to Dismiss*

### 1. *The Insider Trading Claim*

The first question before the Court is whether Jackson violated Exchange Act § 10(b) and Rule 10b–5. Section 10(b) of the Exchange Act provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by use of any means—
>
> . . . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Pursuant to its § 10(b) rulemaking authority the Commission has adopted Rule 10b–5, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility or of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud, [or]
>
> . . . . .
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, ... in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1996).

 Jackson argues that Plaintiffs' claims for violations of Exchange Act § 10(b) and Rule 10b–5 should be dismissed because Plaintiffs do not identify "any basis for the allegation that Jackson had a duty to disclose information about

Bucyrus to the South Street Funds." (Jackson Br. at 9.) Plaintiffs argue that, as an insider of Bucyrus, Jackson "owed a fiduciary duty to the holders of the company's high yield debt." (Pl.Br. in Opp'n to Jackson Br. at 16.) When an allegation of fraud under § 10(b) is based upon nondisclosure, "there can be no fraud absent a duty to speak." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1418 (1993) (citing *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980)).

The *Lorenz* Court noted that "[i]t is well established that a corporation does not have a fiduciary relationship with its debt security holders, as with its shareholders. The relationship between a corporation and its debentureholders is contractual in nature." *Lorenz*, 1 F.3d at 1417 (1993) (citing *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 958–59 (5th Cir.) (*en banc*) (applying New York law), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981); *Metropolitan Securities v. Occidental Petroleum Corp.*, 705 F.Supp. 134, 141 (S.D.N.Y.1989); *Simons v. Cogan*, 549 A.2d 300, 303 (Del.1988); American Bar Foundation, Commentaries on Indentures 2–3 (1971)). Moreover, "[a] corporation's obligations toward its debentureholders are defined by the terms of the indenture, and section 10(b) imposes no additional duties." *Lorenz*, 1 F.3d at 1418. The *Lorenz* Court further noted that "a corporation is under no duty to act for the benefit of its debentureholders, or to refrain from action which dilutes their interest, except as provided in the indenture." *Id.* at 1417 (citing *Parkinson v. West End St. Ry. Co.*, 173 Mass. 446, 448, 53 N.E. 891 (1899) (Holmes, J.); Commentaries, *supra*, at 527).

In *Lorenz*, the plaintiffs, holders of convertible debentures, brought an action against the issuing corporation, its controlling shareholders, and an indenture trustee. *Id.* at 1408–09. The plaintiffs alleged that the defendants defrauded them by failing to disclose material information which would have enabled them to convert their debentures into common stock and to receive a lucrative dividend. *Id.* at 1409. The Third Circuit Court of Appeals affirmed the trial court's dismissal of the plaintiffs' claims. *Id.* The court held that the debentureholders were not entitled to the material information from the defendant because the indenture did not impose a duty to disclose such information upon the defendant. *Id.* at 1417.

Here, the Court finds that Plaintiffs' claim that Jackson breached a fiduciary duty owed to Plaintiffs is similarly without merit. Corporations do not have fiduciary relationships with their debt security holders. *See Lorenz, supra.* Plaintiffs themselves refer to the Bucyrus Debt Securities as high yield corporate debt. The relationship between corporations and debt security holders is contractual in nature. Plaintiffs concede that they have no contractual relationship with Jackson. Further, Plaintiffs have not filed a claim against Bucyrus. Therefore, the Court finds that Plaintiffs have failed to state a claim under Exchange Act § 10(b) and Rule 10b–5.

Plaintiffs argue that *United States v. O'Hagan*, 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997) expanded the scope of *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) by holding that "an insider who misappropriated corporate information for its own benefit violated § 10(b) and Rule 10b–5 independently of any fiduciary duty to disclose to the victims of insider trading." (Pl.Br. in Opp'n to Jackson Br. at 22.) In *Chiarella*, the United States Supreme Court reversed the criminal conviction of the petitioner, a printer who worked for a financial printer in New York, New York. *Chiarella*, 445 U.S. at 224, 100 S.Ct. 1108. Through his employment, the petitioner handled five announcements of corporate takeover bids. *Id.* When the documents were delivered to the printer, the identities of the acquiring and target companies were concealed. *Id.* However, the petitioner deduced the identities of the target corpora-

tions of corporate takeover bids from the information within the documents and, without disclosing his knowledge, purchased stock in the target companies. *Id.* He sold the shares immediately after the takeover attempts were made public. *Id.* The petitioner was indicted and convicted on 17 counts for violations of § 10(b) and Rule 10b–5, and the judgment was affirmed. *Id.* at 225, 100 S.Ct. 1108. The Court reversed, holding that "[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Id.* at 235, 100 S.Ct. 1108. The Court further held that "a duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information." *Id.* A duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Id.* at 228, 100 S.Ct. 1108.

In *O'Hagan*, the United States Supreme Court held that a person who trades in securities for personal profit, using confidential information misappropriated in breach of a fiduciary duty to the source of the information, may be held liable for violating § 10(b) and Rule 10b–5. *O'Hagan*, 521 U.S. 642, 652, 117 S.Ct. 2199, 138 L.Ed.2d 724. Initially, the Court notes that *O'Hagan* is dissimilar from the present case because (1) *O'Hagan* is a criminal case, and (2) James O'Hagan was not trading debt securities, but purchasing call options for common stock. *Id.* at 647, 648, 117 S.Ct. 2199. The facts underlying the Court's decision demonstrate that while Mr. O'Hagan was not a corporate insider in a traditional sense, he violated § 10(b) and Rule 10b–5 by misappropriating confidential information for securities trading purposes *in breach of a duty. O'Hagan*, 521 U.S. at 659, 117 S.Ct. 2199 (emphasis added). Mr. O'Hagan was a partner in the law firm of Dorsey & Whitney in Minneapolis, Minnesota. *Id.* at 647, 117 S.Ct. 2199. In July 1988, a company based in London, Grand Metropolitan PLC ("Grand Met"), retained Dorsey & Whitney as local counsel to represent Grand Met regarding a potential tender offer for the common stock of the Pillsbury Company. *Id.* Both Grand Met and Dorsey & Whitney sought to protect the confidentiality of Grand Met's tender offer plans. *Id.* Mr. O'Hagan did not work on the Grand Met representation. *Id.* Dorsey & Whitney withdrew from representing Grand Met on September 8, 1988, and on October 4, 1988, Grand Met publicly announced its tender offer for Pillsbury stock. *Id.* However, on August 18, 1988, O'Hagan began purchasing call options for Pillsbury stock and some 5,000 shares of Pillsbury common stock. *Id.* When Grand Met announced its tender offer in October, Mr. O'Hagan sold his options and common stock, profiting approximately $4.3 million. *Id.* At trial, Mr. O'Hagan was convicted on all 57 counts against him, but the Eighth Circuit Court of Appeals reversed the convictions holding that liability under § 10(b) and Rule 10b–5 is inconsistent with the misappropriation theory. *Id.* at 649, 666, 117 S.Ct. 2199.

In reversing the Eight Circuit's decision, the Supreme Court explained both the "traditional" or "classical theory" of insider trading liability and the "misappropriation theory," raised by Plaintiffs here. Under the traditional theory, " § 10(b) and Rule 10b–5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *O'Hagan*, 521 U.S. at 651–52, 117 S.Ct. 2199. Trading on such information qualifies as a "deceptive device" under § 10(b) because "a relationship of trust and confidence [exists] between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position with the corporation." *Id.* at 652, 117 S.Ct. 2199 (quoting *Chiarella*, 445 U.S. at 228, 100 S.Ct. 1108) (internal quotes omitted). The Court has recognized that the relationship between shareholders and insiders "gives rise to a duty to disclose [or to abstain from trading] because of the neces-

sity of preventing a corporate insider from ... taking unfair advantage of ... uninformed stockholders." *Id.* (quoting *Chiarella*, 445 U.S. at 228–29, 100 S.Ct. 1108) (internal quotes omitted).

In the present case, the Court declines to extend the Court's decision in *O'Hagan* to a civil case involving a transaction for high yield debt securities. Case law clearly establishes that a corporation does not have a fiduciary relationship with its debt security holders, as with its shareholders. *See Lorenz, supra.* Accordingly, the Court finds that Jackson does not owe a duty to Plaintiffs in connection with the Sale.

■ Plaintiffs further argue that Jackson violated § 10(b) because, under the misappropriation theory, an insider that misappropriates information from its principal and trades on it for its own benefit, violates § 10(b) regardless of whether the insider has any fiduciary duty to the person to whom it trades. (*See* Pl.Br. in Opp'n to Jackson Br. at 12.) The misappropriation theory holds that "a person commits fraud in connection with a securities transaction, and thereby violates § 10(b) and Rule 10b–5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to *the source* of the information." *O'Hagan*, 521 U.S. at 652 (emphasis added). The Court further explained that:

The two theories are complimentary, each addressing efforts to capitalize on nonpublic information through the purchase or sale of securities. The classical theory targets a corporate insider's breach of a duty to shareholders with whom the insider transacts; the misappropriation theory outlaws trading on the basis of nonpublic information by a corporate "outsider" in breach of a duty owed not to a trading party, but to the source of the information. The misappropriation theory is thus designed to protect the integrity of the securities markets against abuses by "outsiders" to a corporation who have access to con-

fidential information that will affect the corporation's security price when revealed, but who owe no fiduciary or other duty to that corporation's shareholders.

*O'Hagan*, 521 U.S. at 652–53, 117 S.Ct. 2199 (quotations omitted).

■ Plaintiffs' argument misconstrues the *O'Hagan* decision. Plaintiffs suggest that, in purchasing the Debt Securities, Jackson violated § 10(b) and Rule 10b–5, even though Jackson did not owe a fiduciary duty to the South Street Funds. The *O'Hagan* Court established that a person commits fraud in connection with a securities transaction, in violation of § 10(b) and Rule 10b–5, "when he misappropriates confidential information for securities trading purposes, *in breach of a duty owed* to the source of the information." 521 U.S. at 652, 117 S.Ct. 2199 (emphasis added). Mr. O'Hagan was an "outsider" of Grand Met, but through his affiliation with Dorsey & Whitney, which represented Grand Met, he obtained inside information. Thus, Mr. O'Hagan owed a duty to the sources of information—his law firm Dorsey & Whitney and its client, Grand Met. In contrast, Jackson did not owe a fiduciary duty to Plaintiffs. Jackson's source of information regarding the value of Bucyrus and the Debt Securities was Bucyrus itself. Jackson's conduct could not constitute a breach of a duty to Bucyrus because Bucyrus was aware of the information that Jackson did not disclose to the South Street Funds. *See O'Hagan*, 521 U.S. at 655, 117 S.Ct. 2199 ("the deception essential to the misappropriation theory involves feigning fidelity to the source of information . . . ."). Therefore, the Court finds that Jackson's conduct did not violate § 10(b) and Rule 10b–5.

Simply put, Jackson did not violate § 10(b) and Rule 10b–5 because the Sale involved debt securities, and a corporation does not owe a duty with respect to debt securities. Alternatively, Jackson did not owe a duty to Plaintiffs under the misap-

propriation theory because Plaintiffs were not the source of the information regarding Bucyrus and there was no fiduciary relationship.

## 2. *Common Law Fraud Claim*

■ Jackson argues that Plaintiffs' claim for common law fraud should be dismissed because Plaintiffs failed to allege any facts showing that Jackson had a duty to disclose material facts to Plaintiffs. Where a claim for fraud is based on silence or concealment, "New Jersey courts will not imply a duty to disclose,. . . ." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir.1993). The question of whether a duty to disclose exists, constituting a fraudulent concealment, is a matter of law. *See United Jersey Bank v. Kensey*, 306 N.J.Super. 540, 551, 704 A.2d 38 (1997). Three categories of relationships give rise to a duty to disclose:

> (1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties.

*Lightning Lube*, 4 F.3d at 1185; *see also Kensey*, 306 N.J.Super. at 551, 704 A.2d 38.

■ Plaintiffs' relationship with Jackson does not fall into any of these categories. The Sale was an arms length transaction between parties experienced in the volatile debt securities market. The Court finds that Plaintiffs have failed to plead facts that would establish Jackson's "duty to speak," i.e., Jackson's duty to disclose information concerning Bucyrus to Plaintiffs prior to the Sale. Accordingly, Plaintiffs common law claims of fraud will be dismissed.

Jackson argues, alternatively, that should the Court grant Jackson's motion to dismiss the insider trading claims, Plaintiffs state common law fraud claims should be dismissed pursuant to FED.R.CIV.P. 12(b)(1) for lack of subject matter jurisdiction. In view of the Court's ruling regarding "duty to speak," this argument need not be addressed.

## 3. *Adequacy as a Representative in a Derivative Action*

■ Alternatively, Jackson argues that Mr. Salovaara cannot adequately and fairly represent the Plaintiffs derivatively for five reasons and the complaint must be dismissed. First, Mr. Salovaara currently seeks indemnification from the South Street Funds for at least seven actions in which he is engaged. (Jackson Br. at 17.) Second, Mr. Salovaara is engaged, both as a plaintiff and as a defendant, in actions involving the very entities that he purports to represent here derivatively. (*Id.*) Third, Mr. Salovaara has testified in a related action that he personally had knowledge, at the time of the Sale, of much of the information that Jackson failed to disclose. (*Id.*) Fourth, Mr. Salovaara "engineered a sham transaction in order to manufacture evidence in support of his claims in this action and in [the *Hindes* action]." (*Id.*) Fifth, there are unique defenses that can be asserted against Mr. Salovaara individually. (*Id.* at 18.)

Federal Rule of Civil Procedure 23.1 provides that: "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." In *Vanderbilt v. Geo–Energy Ltd.*, 725 F.2d 204, 207, the Third Circuit Court of Appeals has held that, in order to adequately represent a class as a derivative counsel, the plaintiff must have competent counsel and the plaintiff must not have interests antagonistic to those of the class. Here, it is undisputed that Mr. Salovaara is represented by competent counsel.

Thus, the Court's inquiry focuses on whether Mr. Salovaara's interests are antagonistic to the South Street Funds's interests.

Jackson cites twelve actions in seven venues, involving the South Street Funds, in which Mr. Salovaara is a party. All of the litigation stems from either Mr. Salovaara and South Street Funds's involvement related to Bucyrus' chapter 11 bankruptcy case or the "winding down" of the South Street Funds. (Jackson Br. at 6.) As noted *supra* at 596, Mr. Salovaara commenced the *Hindes* action, Civil Action No. 96–3203(AKH), in the Southern District of New York. The Hindeses and Mr. Eckert were partial officers of the SSP LPs and controlled the South Street Funds. (See *supra* at 596.) Mr. Salovaara brought the following actions against Mr. Eckert, and other nominal defendants relating to disputes regarding the South Street Funds:

(1) *Salovaara v. Eckert*, MRS–C–29–94 (N.J.Super.Ct., Morris Cty.) (*See* Starkey Aff.Ex. 4.)

(2) *Salovaara v. Eckert*, MRS–C–126–96 (N.J.Super.Ct., Morris Cty.) (*See* Starkey Aff.Ex. 5.)

(3) *Salovaara v. Eckert, et al.*, 94–3430(KMW) (S.D.N.Y.) (*See* Starkey Aff.Ex. 6.)

(4) Salovaara v. Eckert, *et al.*, MRS–L–539–99 (N.J.Super.Ct., Morris Cty.) (*See* Starkey Aff.Ex. 7.)

Mr. Salovaara also commenced actions against third parties seeking damages on behalf of himself and the South Street Funds including an action in New York state Court against Milbank, Tweed, Hadley & McCloy, a law firm from New York, New York and third-party complaints against Milbank, Tweed, Hadley & McCloy in the Eastern District of Wisconsin. (*See* Jackson Br. at 7.) In addition, on or about August 10, 1998, the South Street Funds commenced an action against Mr. Salovaara in Delaware Chancery Court, *South Street Corporate Recovery Fund I, L.P., et al. v. Salovaara*, C.A. No. 16579, 1999 WL 504778 (Del.Ch. July 9, 1999), seeking a declaratory judgment that Mr. Salovaara is not entitled to indemnification for certain costs and fees related to litigation. (*See* Jackson Br. at 7; Starkey Aff.Ex. 8.) Mr. Salovaara has compiled legal fees and expenses in excess of $2.1 million. (*See* Jackson Br. at 8.)

Mr. Salovaara has initiated separate lawsuits against the controlling officers of the South Street Funds, Mr. Eckert and the Hindeses, and the South Street Funds themselves, and all of the litigation stems, directly or indirectly, from the Bucyrus bankruptcy or the Sale of the Debt Securities. Moreover, the South Street Funds have initiated a lawsuit against Mr. Salovaara. As a result, the Court finds that Mr. Salovaara's interests are antagonistic to Mr. Eckert, the Hindeses, and to the South Street Funds collectively—the very parties he seeks to represent. Because of the antagonistic interests between Mr. Salovaara and the derivative Plaintiffs, the Court finds, on alternative grounds, that this derivative action may not be maintained and must be dismissed.

### C. *Lazard's Motion to Dismiss*

#### 1. *Motion to Dismiss under a Forum Selection Clause*

 The next question before the Court is whether the South Street Funds are contractually obligated under the Indemnification Agreement to resolve any disputes with Lazard involving the Sale in either the United States District Court for the Southern District of New York or the state courts of New York City and County. Lazard moves to dismiss pursuant to FED. R.CIV.P. 12(b)(6), arguing that it is the proper basis for motions to dismiss based upon forum selection clauses under Third Circuit jurisprudence. (Lazard Br. at 6 (citing *National Micrographics Sys. v. Canon U.S.A., Inc.*, 825 F.Supp. 671, 679 (D.N.J.1993))).

Section 1404(a) of 28 U.S.C. states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1406(a) states in pertinent part: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

"When a forum selection clause requires an action to be brought in state *or* federal courts of a particular state, and the action is pending in federal court ..., the courts differ as to what is the proper motion to enforce the clause." 17 Moore's Federal Practice, § 111.04[4][a][i] (Matthew Bender 3d ed.) (emphasis in original) (Supreme Court seemed to endorse the use of § 1404(a), see *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); however, three years later the Court cast doubt on whether § 1404(a) is the proper motion, see *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).

The Third Circuit Court of Appeals addressed a similar issue in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877–79 (3d Cir.1995). *Jumara* involved an underinsured motorist case that was filed in the Eastern District of Pennsylvania. *Jumara*, 55 F.3d at 875. The plaintiffs sought an order appointing arbitrators and compelling arbitration by their carrier, the defendant. The plaintiffs' insurance contracts, which incorporated the Pennsylvania Uniform Arbitration Act, contemplated arbitration related-proceedings in either the Court of Common Pleas of Luzerne County, Pennsylvania or the Middle District of Pennsylvania. *Id.* The district court denied the plaintiffs' motion to compel arbitration, reasoning that the insurance contracts, in light of the Pennsylvania law that they incorporated, contained a forum selection clause relegating the plain-

tiffs' suit to the Court of Common Pleas of Luzerne County. *Id.* In effect, the district court disposed of the case under § 1406(a) for improper venue. *Id.* The Third Circuit Court of Appeals held that because venue was proper in the Eastern District of Pennsylvania, "[t]he district court should instead have invoked 28 U.S.C. § 1404(a), which involves a multi-factor balancing test in which a contractual forum selection clause carries substantial although not dispositive weight." *Id.*

The District of New Jersey followed *Jumara* in *Reynolds Publishers, Inc. v. Graphics Financial Group, Ltd.*, 938 F.Supp. 256, 260–61 (1996). In *Reynolds*, the defendants requested dismissal on the ground that a forum selection clause was valid and enforceable. *Reynolds*, 938 F.Supp. at 260. Because the court had personal jurisdiction over the defendants, it held that "the proper analysis involve[d] the § 1404(a) balancing test." *Id.* at 261.

In the present case, it is uncontested that the Court has jurisdiction in this District, where Mr. Salovaara resides and Plaintiffs and Defendants transacted business related to the Sale. *See* 28 U.S.C. 1391(c). Because jurisdiction in this District is proper, this case should not be disposed of pursuant to § 1406(a). Therefore, the Court will consider Lazard's motion to dismiss according to the § 1404(a) balancing tests.

In ruling on § 1404(a) motions, courts consider a variety of factors, beginning with those enumerated in § 1404(a): convenience of the parties, convenience of witnesses, and the interests of justice. Additionally, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (quoting 15 C. WRIGHT, A. MILLER & E. COOPER § 3847). As stated by the *Reynolds* Court:

Those factors include private interests— plaintiff's forum preference as manifest-

ed in the original choice ...; the defendant's preference ...; whether the claim arose elsewhere ...; the convenience of the parties as indicated by their relative physical and financial condition ...; the convenience of the witnesses—but only to the extent that witnesses may actually unavailable for trial in one of the fora ...; and the location of books and records (similarly limited to the extent that the files count not be produced in the alternative forum). The factors also include public interests—the enforceability of the judgment ...; practical considerations that could make the trial easy, expeditious, or inexpensive ...; the relative administrative difficulty in the two fora resulting from court congestion ...; the local interests in deciding local controversies at home ...; the public policies of the fora ...; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Reynolds,* 938 F.Supp. at 261 (citations and quotations omitted). Within the framework set forth above, "the forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara,* 55 F.3d at 880. The court noted that "while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate forum." *Id.* Where a forum selection clause is valid, "which requires that there was no 'fraud, influence, or overweening bargaining power,' the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Jumara,* 55 F.3d at 880 (citations omitted) (citing *Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

### 2. *The Indemnification Agreement*

Plaintiffs argue that the language of the Indemnification Agreement is limited to disputes arising from indemnification claims. The first sentence of the Indemnifi-

cation Agreement provides: "In connection *with our role as your agent in the proposed sale* of the Bucyrus–Erie Co. Secured Notes, you and we are entering into this letter agreement." (*See* Harasymiak Aff.Ex. A, the Indemnification Agreement) (emphasis added). Based on the language referenced above, the Court is satisfied that the present litigation is related to the Indemnification Agreement. Such an interpretation of the agreement appears to be consistent with the intention of the parties. The timing of events provides further evidence that Lazard entered into the agreement to protect itself from this, readily apparent, web of litigation. As Lazard was negotiating the terms of the Sale with Jackson, Mr. Salovaara attempted to enjoin the transaction. On February 28, 1996, approximately one week before the settlement date of the March 4, 1996 Sale, Lazard and the South Street Funds entered into the Indemnification Agreement.

Plaintiffs' argument—that the language of the Indemnification Agreement is limited to disputes arising from indemnification claims—ignores the language of the agreement. The agreement specifically states: "It is understood and agreed that in the event that [Lazard] or any of our members, employees, agents, affiliates or controlling persons, if any [of such "Indemnified Persons"] become involved in *any* capacity in *any* action, claim, proceeding or investigation ... related to, arising out of or in connection with [Lazard's] *services....* " (*Id.*) (emphasis added). The present litigation is clearly related to Lazard's services in negotiating the Sale of the Debt Securities to Jackson. Moreover, the Indemnification Agreement provides that "[t]his agreement and *any* claim related *directly or indirectly* to this agreement (*including any claim concerning advice provided pursuant to this agreement*) shall be governed and construed in accordance with the laws of the state of New York.... No such claim shall be commenced, prosecuted or contin-

ued in any forum other than the courts of the state of New York...." (*Id.*) (emphasis added). Accordingly, the Court finds that the forum selection clause applies to the present litigation.

### 3. *Interests of Justice*

Plaintiffs have not alleged fraud, influence, or overweening bargaining power in the formation of the forum selection clause in the Indemnification Agreement. Therefore, the Plaintiffs bear the burden of demonstrating why they should not be bound by their choice of forum in the Indemnification Agreement. Considering the convenience of the parties and witnesses, the Court finds that the state and federal courts of New York are no less convenient than this Court. The Court places great weight on Lazard's preference for the state and federal courts of New York, particularly because the South Street Funds agreed to accede to Lazard's preference by entering into the Indemnification Agreement.

The Court will dismiss Plaintiffs' complaint, pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim rather than FED.R.CIV.P. 12(b)(3) for improper venue, based on the following considerations. First, on October 23, 1997, the Court granted Jackson's motion to transfer, sending this case to the Southern District of New York for consolidation with the *Hindes* action. *See supra,* at 596. However, on June 3, 1998, the Honorable Kimba Wood transferred this case back to this District holding that it should not be consolidated with the New York action. *See supra,* at 596. (Lazard had not been joined at that time). Second, Lazard was joined as a Defendant recently, on March 1, 1999. Because Lazard was joined recently, dismissal at this time should not unduly prejudice Plaintiffs. Third, Lazard clearly intended to avoid entanglement in the Salovaara web of litigation and took reasonable measures to avoid that result by entering into the Indemnification Agreement with the South Street Funds.

The Court seeks to enforce the intent of parties by dismissing this action, so that it may be re-filed in a forum specified in the forum selection clause. This result will prevent this case from being bounced from this District to another forum and back. In a state or federal court in New York, this case may be litigated on its own merits and not get lost in the national "litigation fallout" from the Salovaara–Eckert "divorce." In the interests of justice, therefore, the Court will grant Lazard's motion to dismiss the complaint pursuant to FED.R.CIV.P. 12(b)(6).

Plaintiffs argue that the Court is not authorized, by Rule 12(b)(6), to dismiss the complaint under the forum selection clause. The Court's authority is referenced in *National Micrographics Systems v. Canon U.S.A.,* 825 F.Supp. 671, 679 (D.N.J.1993) (citing *Lambert v. Kysar,* 983 F.2d 1110, 1112 n. 1 (1st Cir.1993) (holding that motions for dismissal based upon forum selection clauses are founded upon Rule 12(b)(6), not 12(b)(3))). In *National Micrographics,* as in *Jumara* and *Reynolds,* the court transferred the case to the court specified in the forum selection clause. Nevertheless, the authority to dismiss the case pursuant to Rule 12(b)(6) is clearly recognized.

## III. *CONCLUSION*

For the foregoing reasons, Jackson's motion to dismiss the complaint is granted because Plaintiffs claims for violations of sections 10(b) of the Exchange Act and Rule 10b–5 of the General Rules and Regulations under the Act and Plaintiffs' common law fraud claims against Jackson failed to identify a duty to disclose material information concerning the Sale of the Debt Securities that was owed to Plaintiffs. Alternatively, the Court finds that Jackson's motion to dismiss the complaint is granted because Plaintiff Mr. Salovaara is not an adequate representative to derivatively represent the South Street Funds.

Further, Lazard's motion to dismiss the complaint under the forum selection clause

in the Indemnification Agreement, requiring this case to be litigated in the state or federal courts of New York, is granted pursuant to FED.R.CIV.P. 12(b)(6).