PACKER ENGINEERING, INC.,
et al., Plaintiffs–Appellants,

v.

Joseph KRATVILLE, Defendant–
Appellee.

No. 91–2976.

United States Court of Appeals,
Seventh Circuit.

Argued May 1, 1992.
Decided May 22, 1992.

Michael H. King, Ross & Hardies, Bradley B. Falkof, Mark J. McAndrew (argued), Griffin & Fadden, Chicago, Ill., for plaintiff-appellant.

Michael J. Cherskov, Mason, Kolehmainen, Rathburn & Wyss, Fred Louis, III (argued), Olson, Grabill, Hoffman & Louis, Chicago, Ill., for defendant-appellee.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

When Philip Visser charged Packer Engineering Associates with age discrimination, the firm replied that Visser's discharge nine months short of full vesting for a pension stemmed not from age but from a falling out with Kenneth Packer, the firm's founder, namesake, and major domo. Packer Engineering, the employer, defended by contending that Packer, the executive, was cantankerous and demanded loyalty as if he were a prince and the job a fief held on promise of personal service. If true, this explanation shows a reason unrelated to age, so Visser lost. *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655 (7th Cir.1991) (in banc).

Packer and his firm are nothing if not consistent in their vindictiveness. Visser was sacked in the fall of 1987, a period of turmoil characterized by charges that Packer's autocratic ways were injuring the firm, on top of which (the dissidents believed) Packer had siphoned corporate funds to himself. One of the senior executives departing during this tumult was Joseph Kratville, who, in addition to being an officer and director of Packer Engineering, was chairman of the Administrative Committee of the firm's pension plan. Kratville was responsible for selecting the plan's investments. In August 1987 the bank holding the plan's funds proposed to invest a greater portion of the portfolio in common stock. Kratville quit on August 29, leaving behind instructions, he says, to maintain the current investment strategy until further notice—which Kratville, as consultant to the plan during the next month, insists he neither gave nor had authority to give. The bank nonetheless shifted about $350,000 to common stocks, which dropped precipitously during the crash of October 1987. According to the bank, Kratville gave oral permission for this substitution on September 21 or 22. Packer Engineering, the Packer Pension Plan, and Kenneth Packer as trustee of the plan, filed this suit charging Kratville with a breach of his duties under the Employee Retirement and Income Security Act (ERISA).

A jury exonerated Kratville of the charges laid against him. The court then awarded Kratville about $38,500 for legal expenses and costs, on the authority of § 10.6 of the pension plan, which provides that the employer "shall indemnify each member [of the plan's governing committee] against any and all ... expenses ... arising from any action or failure to act, except when the same is judicially determined to be due to the gross negligence or willful misconduct of such member." Plaintiffs' sole argument on appeal is that ERISA voids § 10.6 (and a parallel provision in § 10.5), scuttling the award. They do not contest the jury's decision or the calculation of the amount of legal fees.

■ Section 410(a) of ERISA, 29 U.S.C. § 1110(a), provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." We may assume that § 410(a) nullifies any provision indemnifying a pension fiduciary who has been found liable. But Kratville was absolved, not convicted. Making a faithful fiduciary whole hardly "relieves" the fiduciary of responsibility or liability. Pension administrators such as Kratville should be praised, not told to write a check for $38,000, when they carry out their responsibilities properly.

Packer Engineering insists that the prospect of indemnity under § 10.6 will deter plans from pursuing fiduciaries suspected of questionable conduct. True enough, it deters the filing of *weak* claims. But fee-shifting rules encourage the filing of strong claims, compared with systems in which each side bears its own costs. Steven Shavell, *Suit, Settlement, and Trial: A Theoretical Analysis Under Alternative Methods for the Allocation of Legal Costs*, 11 J. Legal Studies 55 (1982); Avery Katz, *Measuring the Demand for Litigation: Is the English Rule Really Cheaper?*, 3 J.L. Econ. & Organization 143 (1987). And fee-shifting rules make it easier for pension plans to engage the services of persons unwilling or unable to bear the costs of legal contests. A plan with a choice between retaining a risk-averse fiduciary willing to serve only with a promise of indemnity (or insurance, or a higher salary) and hiring a high roller willing to take big gambles (including the gamble of paying a year's income to his lawyer even if he has done no wrong) may well conclude that the timorous manager is the one to have—that risk-takers ought not be at the helm of pension funds. If however a pension plan wants a manager to bear risk, wants to be able to sue its managers without the prospect of fee-shifting, the plan has its own remedy: take an eraser to indemnification clauses. Section 10.6 is the plan's clause, after all, and a pension plan is in no posi-

tion to disown provisions it willingly adopted.

 This appeal, perhaps the whole suit, exemplifies Packer's vengefulness. How could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries *wrongly* accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side? 29 U.S.C. § 1132(g)(1). See *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820 (7th Cir.1984); *Continental Can Co. v. Chicago Truck Drivers Pension Fund*, 921 F.2d 126 (7th Cir.1990). Just in case the implication of § 1132(g)(1) were not clear, we observed in *Leigh v. Engle*, 858 F.2d 361, 369 (7th Cir.1988), another ERISA case, that there is "no statutory or common-law basis for denying fees to a *prevailing* trustee where the trust documents specifically contemplate such reimbursement." (Emphasis in original.) *Leigh* affirmed an award of fees, noting: "Defendants expended great sums of money defending meritless claims. Very few people would become plan administrators if subjected to such unjust, extensive potential costs. Reimbursement here conformed with the trust documents and ERISA." *Ibid.*

Packer's brief on appeal did not cite *Leigh* or nod in the direction of § 1132(g)(1). At oral argument, counsel informed us that because he thought the case distinguishable, it was unnecessary to address the subject. "The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir.1987). Prodded by Kratville, plaintiffs turned their attention to *Leigh* in the reply brief— too late, and too little (they persuaded us only that the case is not distinguishable).

Frivolous maneuvers such as this appeal must be costly to those who invoke the judicial process. Appellate Rule 38 would support a sanction here, see *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (in banc), but none is necessary. Kratville is entitled to indemnification under the plan for expenses on appeal. Yet the plan—that is, the retirement incomes of current and former employees of Packer Engineering—should not be deprived of assets because the firm's CEO takes to the warpath against a departing manager. Kratville is entitled to recompense for the legal fees and other costs incurred in defending this appeal, but none of that money shall come from the plan (as opposed to the other two appellants). Kratville has 15 days to submit a statement of the fees and other expenses (including taxable costs) reasonably incurred in this court.

AFFIRMED, WITH FEES AND EXPENSES.