**STATE STREET BANK AND TRUST COMPANY, as Trustee of the Du-Pont/Conoco Private Market Group Trust and as Trustee of the American Airlines, Inc. Master Fixed Benefit Pension Trust, SSP Advisors, L.P, and SSP, Inc. Plaintiffs–Appellees,**

v.

**Mikael SALOVAARA, Defendant–Appellant.**

Docket Nos. 02–7683, 02–9003.

United States Court of Appeals, Second Circuit.

Argued: Feb. 27, 2003.

Decided: April 15, 2003.

Leo V. Gagion, Dewey Ballantine LLP, New York, N.Y. (Sanford M. Livack, Helena Tavares Erickson, of counsel, on the Brief), for Plaintiffs–Appellees.

Andrew J. Levander, Swidler Berlin Shereff Friedman, LLP, New York, N.Y. (Joseph F. Donley, Robert W. Topp, of counsel; Joseph L. Buckley, Richard H. Epstein, Sills Cummis Radin Tischman Epstein & Gross, P.C., New York, NY, on the Brief), for Defendant–Appellant.

Before: STRAUB, KATZMANN, and RAGGI, Circuit Judges.

KATZMANN, Circuit Judge.

Defendant–Appellant Mikael Salovaara appeals from an order of the United States District Court for the Southern District of New York (Hellerstein, *J.*) granting summary judgment to Plaintiff–Appellee State Street Bank and Trust ("State Street") and entering a declaratory judgment that Salovaara is not entitled to look to an investment fund he founded for indemnification of legal expenses incurred while pursuing six lawsuits ostensibly connected with that fund. Salovaara also appeals the district court's decision to award attorneys' fees to State Street. For the following reasons, we affirm the judgment of the district court.

## BACKGROUND

### I. THE FORMATION OF THE FUND

Salovaara is a former partner in a major investment bank and an operator and manager of private investment funds. He has a special expertise in "distressed securities funds," which are investment funds that buy the stock or bonds of companies in financial trouble with the expectation that the companies' performance will rebound, thereby increasing the value of their securities.

In 1991, Salovaara and his former investment banking partner, Alfred C. Eckert III, formed an investment fund called the South Street Corporate Recovery Fund, L.P. ("South Street" or "the Fund"), along with several other funds ("the Other Funds"), to invest in distressed securities. The Fund raised most of its capital from large institutional investors; because more than 25% of the capital it raised was from pension plans, the Fund was subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1381 (2000). *See* 29 C.F.R. § 2510.3–101 (2002).

South Street is organized in a "three-tier" structure. The bottom level is the Fund itself, organized as a limited partnership under Delaware law. The Fund's investors participate as limited partners within South Street. The general partner within South Street is SSP Advisors, a plaintiff-appellee in this case and itself a Delaware partnership. SSP Advisors in turn has as its general partner an entity known as SSP, Inc. ("SSP"), also a plaintiff-appellee in this case. SSP possesses all management authority for the Fund, and is owned 50–50 by Salovaara and Eckert. Salovaara and Eckert also established another entity known as Greycliff Partners ("Greycliff"), which served as the exclusive investment advisor for South Street and the Other Funds. The terms of South Street's structure and rules are set forth in the Agreement of Limited Partnership, executed June 18, 1992 ("the Agreement"). Section 10 of the Agree-

ment contains a clause broadly indemnifying the General Partner (SSP Advisors) and any affiliate or agent of the General Partner for "any and all" expenses arising from the operation of the fund, including legal expenses. *See* Agreement § 10(a), at 45. Unlike the typical indemnification agreement, the indemnification clause in the South Street Agreement can be read to indemnify Salovaara, not only for defensive legal fees, but also for the costs of bringing affirmative lawsuits related to the operation of the fund. Moreover, because the indemnification "shall be paid . . . from the assets of the Partnership," Agreement § 10(e), at 45, Salovaara's reimbursement for any lawsuits that he might chose to initiate would be paid directly from the assets of the ERISA pension plan investors.

The twenty-nine investors in South Street include eight mutual fund companies, four trust funds, three insurance companies, two Forbes–400 individuals, a foundation, and a college. All but two made initial investments of at least $1 million, and the average investment was approximately $5 million. The total initial capital came to $146 million. The leading investor was the Dupont/Conoco Private Market Group Trust ("DuPont"), a trust representing two ERISA retirement funds. DuPont invested $40 million, more than four times as much as the next largest investor. Appellee-plaintiff State Street Bank and Trust Company ("State Street"), trustee for DuPont, acts on the trust's behalf in this action.

In 1993, Eckert became sole director and assumed day to day managerial control over SSP. Salovaara and Eckert subsequently had a falling-out because Eckert began to participate in an unrelated fund formed by Greenwich Street Capital Partners, Inc. ("Greenwich Street"), while still maintaining control over South Street.

Meanwhile, in 1994, a committee representing South Street's investors decided to liquidate the Fund's holdings. This concomitant dispute with Eckert and Fund liquidation precipitated a series of lawsuits that underpins the current appeal.

## II. THE UNDERLYING LITIGATION

Over the years between 1994 and the present, Salovaara has been involved in seven lawsuits related in some way to South Street and relevant to this appeal. We describe each in turn.

### A. *Salovaara v. Eckert (N.J.Super.Ct.): "Salovaara I"*

*Salovaara v. Eckert*, MRS–C–29–94 (N.J.Super.Ct.1994) ("Salovaara I") was filed in February 1994. The Complaint charged that Eckert's work with Greenwich Street was a conflict of interest that breached the duties he owed to Greycliff. Salovaara sought a preliminary injunction to prevent Eckert from managing Greenwich Street, which the court denied. Eckert asserted counter-claims alleging that Salovaara mismanaged funds controlled by Greycliff and sought Greycliff's dissolution. After a bench trial, the court found in July 1998 for Salovaara, awarding him $4 million in damages and the right to direct Greycliff's dissolution.

### B. *Salovaara v. Eckert (S.D.N.Y.): "Salovaara II"*

*Salovaara v. Eckert*, 94–Civ.–3430 (S.D.N.Y.1994) ("Salovaara II") was filed in May of 1994 against Eckert, Greenwich Street, and various affiliates. The Complaint alleged violations of ERISA and common law duties based on various investments made by South Street. Salovaara sought damages and equitable relief for himself and for South Street. In January 1996, the district court (Wood, *J.*) granted Salovaara's motion for a prelimi-

nary injunction and ordered Eckert either to resign from Greenwich Street, resign from South Street, or arrange for an independent manager for investments that presented a conflict. Eckert chose the last option.

In May 1998, the court dissolved the injunction, granted Eckert's motion for summary judgment on the ERISA claims, and declined to exercise jurisdiction over the common-law claims. *Salovaara v. Eckert*, 1998 WL 276186 (S.D.N.Y. May 28, 1998). The court held that Salovaara had failed to establish any loss to South Street from Eckert's actions. *Id.* at *8. This Court summarily affirmed. *Salovaara v. Eckert*, 182 F.3d 901 (2d Cir.1999) (table).

Eckert moved for sanctions and attorneys' fees, and Salovaara cross-moved for attorneys' fees. The district court denied Salovaara's cross-motion, stating that Salovaara had "never showed that there was any benefit conferred upon anyone (other than himself) by the Court's decision to grant a preliminary injunction." *Salovaara v. Eckert*, 1999 WL 33117364, at *5 (S.D.N.Y. May 24, 1999). The court also awarded fees to Eckert and imposed sanctions on Salovaara and his counsel. *Id.* at *9. This Court affirmed the denial of fees to Salovaara, but reversed the fee award to Eckert and vacated the sanctions. *Salovaara v. Eckert*, 222 F.3d 19, 23 (2d Cir.2000).

### C. *Greycliff Partners v. SSP, Inc.* (N.Y.Sup.Ct.): "Greycliff"

In May 1996, Salovaara filed *Greycliff Partners v. SSP, Inc.*, Civ.–96–601366 (N.Y.Sup.Ct.1996) ("Greycliff"). He sued SSP, Inc., SSP Advisors, and SSP Partners, L.P. on behalf of Greycliff (of which he was still a 50% owner), alleging that the SSP entities had not paid Greycliff approximately $411,000 in fees owed pursuant to the advisory agreement between the par-

ties. The SSP entities counterclaimed, arguing that Salovaara had breached his fiduciary duties to South Street. On July 20, 2000, the court found for Greycliff after a bench trial, awarded it the money sought, and denied the counterclaims.

### D. *Salovaara v. Hindes* (S.D.N.Y.): "Hindes"

In May of 1996 Salovaara sued Gary and Denise Hindes in the Southern District of New York. *Salovaara v. Hindes*, 242 F.3d 367. Salovaara alleged that the Hindeses, who were officers and directors of SSP, breached their fiduciary duty to the Fund by authorizing the sale of certain securities at an unreasonably low price. Although the complaint was styled as a derivative ERISA action, the only relief sought was damages for Salovaara. Salovaara, in his brief in opposition to a summary judgment motion, later dropped the personal claims. On March 15, 2000, the district court (Hellerstein, *J.*) granted the Hindeses' motion for summary judgment and dismissed the complaint in an oral decision. This Court summarily affirmed. 242 F.3d 367 (2d Cir. 2000) (table).

### E. *Salovaara v. Jackson Nat'l Life Ins. Co.* (D.N.J.): "Jackson Life"

Salovaara then sued Jackson National Life Insurance, the party that had bought the securities in dispute in *Hindes*, in federal court in New Jersey. *Salovaara v. Jackson Nat'l Life Ins. Co.*, 66 F.Supp.2d 593 ("*Jackson Life*"). The complaint was again styled as a derivative action brought on behalf of the Fund and various SSP entities. The district court (Hughes, *M.J.*) granted defendants' motion for summary judgment on July 1, 1999. *Jackson Nat'l Ins. Co.*, 66 F.Supp.2d 593, 606–07 (D.N.J. 1999), *aff'd* 246 F.3d 289 (3d Cir.2001). The court found that Salovaara was "not an adequate representative" of the funds

and partnerships on whose behalf he sought to act, because he was actually "antagonistic" to South Street's interests due to the numerous pending cases against South Street officers and directors. 66 F.Supp.2d at 603, 606–07.

### F. *Salovaara v. Eckert* (N.J.Super.Ct.): "Salovaara III"

In February 1999, Salovaara sued Eckert again in New Jersey Superior Court, this time alleging that Eckert attempted to condition the payout of certain funds to Salovaara on Salovaara's signing various agreements that would modify the previous contractual arrangements. That case is still pending.

### G. *State Street Bank v. Salovaara,* (DE Chancery Ct.): "The Delaware Action"

In July and August of 1998, Salovaara wrote to Eckert demanding that the Fund reimburse him for his legal expenses in the previously-listed six lawsuits, pursuant to the indemnification clause. In response, South Street filed an action in Delaware Chancery Court seeking a declaration that Salovaara was not entitled to indemnification under the agreement and under Delaware partnership law.[1] State Street Bank moved to intervene on behalf of the ERISA investors in February 1999, seeking to assert that using any of the ERISA funds to reimburse Salovaara would violate the Act. The Delaware court denied the motion to intervene on July 9, 1999. The Delaware plaintiffs then sought to dismiss the complaint without prejudice, because they wished to litigate only the ERISA issue. Salovaara cross-moved to dismiss with prejudice. After Judge Hellerstein's ruling in the instant case, the Delaware court entered a judgment and order that declared that the non-ERISA plaintiffs

had a contractual obligation to indemnify Salovaara, but ordered that none of the funds used for any potential indemnification for the six underlying lawsuits could come from any of the Fund's assets.

### III. PROCEDURAL HISTORY

State Street Bank brought this action in the United States District Court for the Southern District of New York (Hellerstein, *J.*) on behalf of the ERISA investors in September 2001. It sought a declaration that (1) use of State Street's assets to indemnify Salovaara would violate ERISA, and (2) that the use of any of State Street's assets to reimburse SSP Advisors for payments it made to Eckert in relation to *Salovaara I* would violate ERISA. State Street also sought attorneys' fees and costs. State Street moved for summary judgment in March of 2002, and the district court granted the motion in an oral decision on April 22, 2002. In its decision, the court considered each of the six Salovaara litigations and concluded in each case that the action had not been brought for the benefit of South Street. It furthered ruled that ERISA prohibited the transfer of fund assets to reimburse Salovaara. State Street then moved for attorneys' fees, and on August 6, 2002, in a second oral decision, the district court awarded State Street $156,227, approximately half the fees it sought. This appeal followed.

### STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo. Opals on Ice Lingerie v. Body Lines Inc.,* 320 F.3d 362, 367–68 (2d Cir.2003). Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted only when there is no genuine issue as to any

---

1. Eckert, SSP, SSP Partners, and one of the Other Funds were also plaintiffs in that suit.

material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' ... materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.... A reasonably disputed, legally essential issue is both genuine and material and must be resolved at trial." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citation omitted)).

## DISCUSSION

This appeal presents four issues: (1) in the circumstances of this case, whether ERISA permits the use of fund assets to indemnify a fund manager for ostensibly fund-related litigation that the manager chose to initiate; (2) given the statutory restrictions, whether each of the lawsuits at issue qualify for indemnification; (3) whether the district court was correct that ERISA further bars any remedy that would tax the Fund for the pro rata share of the non-ERISA investors' assets; and (4) whether the district court erred in awarding attorneys' fees to State Street. We consider each issue in turn.

## I. ERISA REQUIREMENTS

### A. *The Statutory Scheme*

■ As this Court has recently observed, "ERISA was enacted in order to protect employee pension and retirement plans." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 302 F.3d 18, 26 (2d Cir.2002) (citing H.R. REP. No. 93–533, at 1 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4639). One way the

Act pursues this purpose is by imposing "certain general fiduciary duties applicable to the management of [ERISA-regulated] plans." *Varity Corp. v. Howe,* 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). At oral argument, Salovaara declined to concede that he was a fiduciary with respect to the Plan. It is clear to us, however, that he is: During all relevant times he was a 50% co-owner of SSP, which is indisputably a fiduciary pursuant to ERISA. Furthermore, he represented himself as an ERISA fiduciary in his complaints in *Salovaara II,* and *Hindes,* two of the very court proceedings at issue in this appeal. Finally, and most importantly, Salovaara alleges that he is entitled to reimbursement from the assets of the partnership for the costs associated with independently bringing the six underlying lawsuits. Thus, under his own interpretation of the South Street partnership agreement, Salovaara effectively exercised discretionary control over the disposition of ERISA plan assets, so as to trigger ERISA's fiduciary duty requirements.

Section 404(a) of the Act contains a clause that imposes a general standard of duty on all fiduciaries:

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries[.]

29 U.S.C. § 1104(a)(1)(A)(i). This statutory duty of loyalty has been described by this Court as requiring that a fiduciary act, in Judge Friendly's felicitous phrase, with an "eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.). This requirement has also been described as the "exclusive benefit rule." *New Eng-*

*land Health Care Employees Union, Dist. 1199 v. Mount Sinai Hosp.,* 65 F.3d 1024, 1032 (2d Cir.1995).

ERISA further seeks to safeguard the interests of fund recipients by imposing strict regulations on the ability of "parties in interest" with respect to a fund to transfer moneys from the fund to themselves or to third parties. The basic rule is set forth in ERISA section 406:

(a) Except as set forth in § 1108 [ERISA section 408] of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in any transaction, if he knows or should know such transaction constitutes a direct or indirect—

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan[.]

29 U.S.C. § 1106. Section 406 thus acts as a blanket ban, exempting only the specified transactions that are enumerated in Section 408. Section 408 provides, in relevant part:

(b) Enumeration of transactions exempted from section 1106 [ERISA § 406] prohibitions

The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions:

(2) Contracting or making *reasonable arrangements* with a party in interest for office space, or legal, or accounting, or *other services* necessary for the establishment or operation of the plan, if no more than *reasonable compensation* is paid therefor.

\*　\*　\*　\*　\*　\*

(c) Fiduciary benefits and compensation not prohibited by section 1106 [ERISA § 406]

Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from—

(2) receiving any *reasonable compensation* for services rendered or for the *reimbursement of expenses properly and actually incurred,* in the performance of his duties with the plan . . . .

29 U.S.C. §§ 1108(b)(2) & (c)(2) (emphasis added).

**B.　*Indemnification and ERISA***

 We believe that the indemnification of a fiduciary by a plan is clearly permitted by ERISA pursuant to the plain language of Section 408(c): "Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from—(2) receiving any reasonable compensation . . . for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan . . . ." The reimbursement envisioned by Section 408(c) is not unlimited, however. Where a party seeks reimbursement not only for defensive legal costs, but also for the legal costs of initiating lawsuits, ERISA restricts such reimbursement to expenses that are "properly . . . incurred, in the performance of [the fiduciary's] duties with the plan." Where an indemnification agreement essentially grants a party discretionary control over plan assets, we believe that the proper measure of whether an expense was "properly" incurred should be made by reference to the "exclusive benefit rule" derived from the duty of loyalty imposed by Section 404.

Salovaara tries to evade the rigors of Section 404's duty of loyalty by way of three arguments. Two of his arguments are easily rejected. He argues that Section 410, which forbids certain kinds of indemnification, obviates the Section 404

duty.[2] We do not understand the sense of this argument. Section 410 simply imposes a flat bar on any fiduciary that has been found to have violated its duty to the plan from recouping its expenses from the very plan it injured. Salovaara tries to extend this to a claim that by implication, *any* indemnification claim that is not barred by Section 410 is permitted. Such a rule would undermine the statutory scheme, which imposes a clear duty of loyalty on *all* transactions, and then creates very specific exemptions from the blanket rule. Salovaara can point to no authority for his novel reading other than citing various cases for the proposition that some indemnification agreements are permitted by ERISA, which is not in dispute. *See, e.g., Packer Engineering, Inc. v. Kratville,* 965 F.2d 174, 175–76 (7th Cir.1992). Accordingly, we reject his argument as without merit.

Salovaara also contends that, pursuant to Section 405, he was forced to sue Eckert to avoid potential liability himself, and that therefore Section 404 should not apply.[3] This argument is also meritless, and only given cursory treatment in his brief. Section 405(a) contains a safe harbor excluding a fiduciary from liability for a co-fiduciary's breach so long as he takes "reasonable measures" to remedy the breach. We need not define the limits of "reasonable measures" to remedy a co-fiduciary's breach of the Act to note that Salovaara's decision to bring six separate lawsuits is so disproportionate that it is clearly beyond what the Act might conceivably require. Nor is there much logic in the idea that this single section would obviate the broad and general duty of loyalty imposed by section 404.

Salovaara's most complex argument is that any action by a fiduciary with respect to the terms of his employment is not an action "with respect to a plan," 29 U.S.C. § 404(a)(1)(A)(i), and thus exempt from Section 404's duties. Salovaara contends that the indemnification is merely another form of compensation, and relies upon this Court's recent decision in *Harris Trust* for the proposition that " 'a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation.' "

---

**2.** Section 410 reads in its entirety as follows:

(a) Except as provided in sections 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.

(b) Nothing in this subpart shall preclude—.

(1) a plan from purchasing insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary;

(2) a fiduciary from purchasing insurance to cover liability under this part from and for his own account; or

(3) an employer or an employee organization from purchasing insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan.

29 U.S.C. § 1110 (2002).

**3.** Section 405(a) reads as follows:

(a) Circumstances giving rise to liability:

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

\* \* \* \* \* \*

(3) if he has knowledge of a breach by such other fiduciary, *unless he makes reasonable efforts under the circumstances to remedy the breach.*

29 U.S.C. § 1105(a)(2002) (emphasis added).

302 F.3d at 31 (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir.1987)). We do not find Salovaara's attempt to shoehorn the indemnification agreement into an unnaturally broad definition of compensation persuasive in the face of an express statutory provision relating to reimbursement. Salovaara's interpretation of the statute depends upon an expansive reading of the phrase "compensation for services rendered," while ignoring the phrase "reimbursement of expenses properly and actually incurred." 29 U.S.C. § 1108(c)(2). We believe this is a strained interpretation of the Act.

■ To "indemnify" is clearly defined as a recoupment of expenses or losses incurred: "(1) To reimburse (another) for a loss suffered because of a third party's act or default. (2) To promise to reimburse (another) for such a loss." BLACK'S LAW DICTIONARY 772 (7th ed.1999). Furthermore, the indemnification clause at issue in this appeal is broadly worded, covering not just legal fees but "losses, ... costs, [and] expenses ... of any kind or nature whatsoever." Agreement § 10(a), at 45. If such a generalized indemnification is "compensation for services rendered" and not reimbursement, it is unclear what else "reimbursement" could mean. Salovaara's reading leaves the latter phrase from Section 408(c) surplusage. It is well-settled that courts should avoid statutory interpretations that render provisions superfluous: "It is our duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (additional internal quotation omitted)); *see also Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (describing rule against surplus-

age as a "cardinal principle of statutory construction").

Furthermore, *Harris Trust* provides no refuge for Salovaara's position. In *Harris Trust*, this Court held that a fiduciary's collection of an agreed-upon percentage fee as compensation, and the fiduciary's refusal to agree to extra-contractual asset withdrawals it had consented to in the past, were both exempt from the Section 404 duty of loyalty because, in each case, the fiduciary was merely carrying out the terms of a contract. As the panel emphasized, the actions of the fiduciary were not undertaken pursuant to the exercise of discretion that characterizes the actions of a fiduciary, but were merely performance of the agreement. *Harris Trust*, 302 F.3d at 29 ("[B]y specifically providing [how funds would be withdrawn] the Contract stripped Hancock [the fiduciary] of any discretionary authority it may have had in this respect."). In contrast, Salovaara seeks reimbursement for fees associated with legal proceedings he chose to initiate as part of his discretion, a very different circumstance than the contract obligations at issue in *Harris Trust*. We believe accordingly that *Harris Trust* is easily distinguishable.

We hold, therefore, that an ERISA fiduciary, who effectively has discretionary control over plan assets by virtue of an indemnification agreement, may be indemnified by the plan only for those expenses that are incurred pursuant to his duties with the plan, and that are undertaken for the exclusive benefit of the plan. To prevail, Salovaara must show that he initiated the lawsuits in question as part of his duties with South Street and with an "eye single" towards the benefit of South Street. *Donovan*, 680 F.2d at 271.

## II. THE LAWSUITS

The next step in the analysis is to determine whether the fees Salovaara seeks

were incurred "in the performance of his duties with the plan." We have grouped them according to the theory under which Salovaara asserts his entitlement, as did the parties. The parties agree that the proper standard of evaluation is the purpose of the suit, not the result, *see Roth v. Sawyer–Cleator Lumber Co.,* 16 F.3d 915, 918 (8th Cir.1994), and that the purpose is to be evaluated objectively, *see, e.g., Katsaros v. Cody,* 744 F.2d 270, 279 (2d Cir. 1984) (stating that ERISA fiduciary is judged according to "prudence," an objective standard derived from the common law of trusts).

### A. Suits Allegedly on Behalf of South Street

■ Salovaara claims that *Salovaara II, Hindes,* and *Jackson Life* were brought on behalf of South Street. All three were, to varying degrees, styled as derivative suits on behalf of the fund. We note at the outset that the Agreement specifically entrusts the General Partner with the power to control litigation on the Fund's behalf. *See* Agreement § 5.1(k), at 31. The general partner was SSP Advisors, which was in turn controlled by SSP. There is no evidence in the record to suggest that SSP Advisors or SSP authorized any of the lawsuits at issue.

In *Hindes,* the case was styled as a derivative action, but the relief sought was all for Salovaara individually. *See Hindes* Complaint at ¶¶ 63, 67, 69. We believe that clearly establishes that the suit was not brought for the exclusive benefit of the Fund. In the *Jackson Life* case, Salovaara asserted that the action was brought both on his own behalf and derivatively on behalf of the Fund. We need not decide whether the mere fact that Salovaara sought damages for himself as well as the Fund by itself precludes a finding that he acted for the exclusive benefit of the Fund

sufficiently to satisfy the Section 404 duty of loyalty, because we think it is clear in context that the suit was brought primarily for Salovaara's benefit. The district court in *Jackson Life* held that Salovaara was "not an adequate representative" of the Fund, 66 F.Supp.2d at 603, and we agree that the record makes clear that Salovaara was not acting for the exclusive benefit of the Fund.

In *Salovaara II,* the case was again styled as a derivative action, but the Complaint is ambiguous as to whether Salovaara sought damages on his own behalf or on behalf of the Fund. We note that the *Salovaara II* court held that Salovaara had failed to establish any loss to South Street from Eckert's breach towards Salovaara, and that therefore Salovaara could not maintain an ERISA action. 1998 WL 276186, at *8. We believe that the record will not support an indemnification claim as to this action.

### B. Suits Defending Against Counter-Claims

■ Salovaara further claims that *Salovaara, Salovaara II,* and *Greycliff* all involved an entitlement to "defensive fees" because he was forced to defend himself against counterclaims. The pleadings in *Salovaara I* make clear that Eckert's counterclaims against Salovaara are only in connection with Greycliff Partners, not South Street, and therefore cannot support indemnification. More fundamentally, we believe that the fact that Salovaara undertook these suits without the participation of the General Partner, which was authorized to prosecute all actions on the Fund's behalf, and the fact that these suits were primarily brought for Salovaara's personal benefit, block him from indemnification for counterclaims that arise as a result of his decision to bring the lawsuits. Having initiated litigation without authorization

from the Fund and for his own benefit, Salovaara cannot now seek to use pension assets to offset the costs of counterclaims that arose as a consequence of his own individual suits.

Contrary to Salovaara's assertions, we do not believe that *Packer Engineering* provides otherwise. In *Packer,* the party seeking indemnification was on the receiving end of a lawsuit that grew out of a personal feud over the management of the fund in question. *Packer,* 965 F.2d at 175. The Seventh Circuit permitted the manager who had been thrust into a purely defensive role in the face of a plaintiff's "vengefulness," *id.* at 176, to recover costs *from the plaintiff C.E.O. and Corporation,* not the fund. *See id.* ("Kratville is entitled to recompense for the legal fees and other costs incurred in defending this appeal, but none of that money shall come from the plan (as opposed to the other two appellants)."). In the instant case, unlike in *Packer,* any costs incurred defending against a claim of breach of fiduciary duty arose after the instigation of a suit itself in breach of a fiduciary duty. In sum, Salovaara cannot be indemnified with ERISA funds for these expenses.

## C. *Suits to Collect Fees Owed*

■ Finally, Salovaara seeks indemnification as to the three suits that sought to recoup management fees owed to Salovaara or entities he controlled. His argument here reprises the compensation argument: He urges that a suit by a fiduciary to collect compensation owed to it by an ERISA fund is not subject to the duty of loyalty, citing our decision in *Harris Trust.* *See* 302 F.3d at 31. We fail to see the relevance of this argument, however, because none of these actions sought recovery from the Fund. *Salovaara I* sought damages only from Eckert, *Greycliff* sought to recover from SSP and SSP Advisors, and *Salovaara III* sought recovery from Eckert and SSP Advisors. None of these suits sought recovery from the Fund itself. Salovaara cannot seek indemnification from the Fund for these expenses.

## III. THE BREADTH OF THE DISTRICT COURT'S RULING

■ Salovaara argues in the alternative that, even if ERISA prohibits the transfer of assets from the fund to him pursuant to the indemnification clause, the district court erred in holding that such a rule barred *any* transfer to Salovaara. Instead, he argues, the correct remedy would be to award him a pro rata share of the fees representing the percentage of non-ERISA assets invested in the funds. Both parties acknowledge that this question is governed by Department of Labor regulation 29 C.F.R. § 2510.3–101(a)(2)(2002), which provides that the ERISA investors have an "undivided interest" in the assets of the fund.[4] Salovaara does not take this provision as any bar to the parsing of assets he proposes, but it is difficult to interpret the language otherwise than as forbidding a pro rata payment. Salovaara cites no authority for the permissibility of such a division, and it is difficult to reconcile his proposal with the language of the regulation. We therefore reject Salovaara's argument.

## IV. THE DISTRICT COURT'S AWARD OF ATTORNEYS' FEES

■ Salovaara also challenges the district court's decision to award approxi-

---

4. The regulation reads, in relevant part, "in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity." 29 C.F.R. § 2510.3–101(a)(2) (2002).

mately $156,227 in attorneys' fees to State Street. ERISA authorizes the court to award attorneys' fees at its discretion. *See* 29 U.S.C. § 1132(g)(1).[5] This decision is based on the consideration of five factors: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants. *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987). We review the district court's decision for abuse of discretion. *Lauder v. First Unum Life Ins. Co.,* 284 F.3d 375, 379 (2d Cir.2002). The district court applied the correct standard, and found that all five factors supported the award of fees. We do not believe the district court abused its discretion, and so affirm the award.

### Conclusion

For the foregoing reasons, we hold that (1) the indemnification clause in the Agreement is "reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan" and therefore permitted by ERISA; (2) to the extent that an indemnification agreement grants a party discretionary control over plan assets, any claim for reimbursement by an ERISA fiduciary must be judged by the duty of loyalty imposed by Section 404; (3) the assets of the fund are not severable because of the ERISA investors' "undivided interest"; and (4) as a matter of law, Salovaara is not entitled to indemnification for the expenses incurred while prosecut-

ing the six lawsuits at issue. The order of the district court is therefore affirmed.

---

5. The fee-shifting section reads, in relevant part, "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).