**ALLAIRE CORPORATION,**
Plaintiff–Appellant,

v.

**Ahmet H. OKUMUS, Okumus Capital, LLC, Okumus Opportunity Fund, Ltd., Okumus Technology Value Fund, Ltd., Okumus Advisors, LLC, Okumus Opportunity Partners, LP, Okumus Technology Advisors, LLC, and Okumus Technology Value Partners, LP, Defendants–Appellees.**

Docket No. 04–2149–CV.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 15, 2005.

Decided: Jan. 5, 2006.

John H. Henn, Foley Hoag, LLP (Steven W. Phillips, of counsel), Boston, MA, for Plaintiff–Appellant.

Jonathan Honig, Feder Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, LLP, New York, NY, for Defendants–Appellees.

Before: KEARSE, SACK, and SOTOMAYOR, Circuit Judges.

## BACKGROUND

SACK, Circuit Judge.

Plaintiff Allaire Corporation ("Allaire") is a Delaware corporation.[1] At all relevant times, Allaire's common stock was traded on the NASDAQ National Market. Defendant Ahmet H. Okumus directly or indirectly controls each of the other defendants (defendants collectively, "Okumus").

According to Allaire's complaint, Okumus wrote (sold) a set of call options on Allaire common stock on November 17, 2000. Three days later, on November 20, 2000, Okumus allegedly acquired a sufficient number of shares to become a statutory insider for purposes of section 16(b). On December 16, 2000, the November 17 calls expired unexercised. On January 16, 2001, Okumus wrote a second set of calls on Allaire common stock. Okumus allegedly remained a statutory insider throughout this period.

On March 18, 2003, Allaire brought suit against Okumus in the United States District Court for the Southern District of New York alleging that Okumus was a "statutory insider" who was liable to Allaire under section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1994),[2] for making short-swing trades in Allaire common stock or its equivalent. Relying on rules promulgated by the Securities and Exchange Commission ("SEC") that govern section 16(b)'s applicability to transactions in derivative securities, Allaire alleges that the expiration of the November calls in December constituted a "purchase" of Allaire stock, and that the writing of a new set of calls in January constituted a "sale" of Allaire stock. Allaire argues that these two transactions ought to be matched with one another as a basis for holding Okumus liable under section 16(b) for the profits Okumus generated from them. See Rule 16a–1, 17 C.F.R. § 240.16a–1; Rule 16b–6, 17 C.F.R. § 240.16b–6.

The district court (Thomas P. Griesa, *Judge*) dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Allaire Corp. v. Okumus*, No. 03 Civ.1901, 2004 WL 719178, 2004 U.S. Dist. LEXIS 5576 (S.D.N.Y. Mar. 31, 2004). The court concluded that the expiration of the first set of calls was not a purchase under SEC Rule 16b–6 and that the plaintiff had therefore failed to state a claim under section 16(b).

Allaire appeals.

## DISCUSSION

### I. Standard of Review

"We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting as true the factual allegations in the

1. Allaire is the successor-in-interest to another Delaware corporation, also named "Allaire Corporation," but there is no need to distinguish between the two for purposes of resolving this appeal.

2. Section 16, 15 U.S.C. § 78p, was amended in 2000. P.L. 106–554 (effective date Dec. 21). The expiration at issue in this case occurred on December 16, 2000, and the second sale of calls occurred on January 16, 2001. We therefore look to the statute in effect as of December 16, 2000. We note, however, that the 2000 amendment does not affect the law at issue on this appeal. Both the plaintiff and the defendants refer to the amended version of the statute in their arguments, as did the district court in its opinion.

complaint and drawing all inferences in the plaintiff's favor." *Scutti Enters., LLC. v. Park Place Entm't. Corp.,* 322 F.3d 211, 214 (2d Cir.2003). A complaint may not be dismissed under the Rule "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Id.* (internal quotation marks and citation omitted).

## II. Section 16(b)

Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), provides that statutory insiders of a corporation will forfeit any profits they make as a result of their "short-swing" trades in the equity securities of the corporation. It reads:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner ... by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner ... in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.... This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations

may exempt as not comprehended within the purpose of this subsection.

15 U.S.C. § 78p(b) (1994).

Section 16(a) defines "insider" for these purposes as any person "who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered pursuant to § 78l of this title." 15 U.S.C. § 78p(a) (1994). A "short swing" trade is a sale and a purchase of such equity security made within six months of each other. *See* 15 U.S.C. § 78p(b). Under the facts as alleged by Allaire, Okumus was a statutory insider from November 20, 2000, through February 16, 2001, when he divested himself of all his equity interest in Allaire.

The SEC has, by regulation, defined the term "equity security" to mean "any equity security or derivative security relating to an issuer, whether or not issued by that issuer." 17 C.F.R. § 240.16a–1(d). Any purchase (or its equivalent) of an equity security in a corporation may be matched with any sale (or its equivalent) of such a security, provided the transactions occur within six months of each other. *Magma Power Co. v. Dow Chem. Co.,* 136 F.3d 316, 320 (2d Cir.1998). "The statutory definitions of 'purchase' and 'sale' are broad and, at least arguably, reach many transactions not ordinarily deemed a sale or purchase." *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 593–94, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973).

## III. Rule 16b–6(a)

In 1991, the SEC issued regulations to govern the application of section 16(b) to derivative securities.[3] *See* Ownership Re-

---

**3.** "[D]erivative securities [are] financial instruments that derive their value (hence the name) from an underlying security or index." *Magma Power Co.,* 136 F.3d at 321. A call option gives its holder the right to purchase shares of an equity from the option seller at a specified strike price. *See Black's Law Dictionary* 1127 (8th ed.2004).

ports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34–28869, Investment Company Act Release No. 35–25254, 56 Fed.Reg. 7242–01, 7248 (Feb. 21, 1991) ("[T]he Commission is adopting a comprehensive regulatory framework, in order to effect the purposes of section 16 and to address the proliferation of derivative securities and the popularity of exchange-traded options."). Rule 16b–6(a) provides in relevant part:

> The establishment of or increase in a call equivalent position or liquidation of or decrease in a put equivalent position shall be deemed a purchase of the underlying security for purposes of section 16(b) of the Act, and the establishment of or increase in a put equivalent position or liquidation of or decrease in a call equivalent position shall be deemed a sale of the underlying securities for purposes of section 16(b) of the Act ....

*Id.*, 17 C.F.R. § 240.16b–6(a). The principal issue before us on appeal is whether, under Rule 16b–6(a), the expiration of a short call option is a purchase, thereby exposing its insider/writer to section 16(b) liability if within six months after that expiration he or she also wrote (sold) another such call option.

Allaire's reading of Rule 16b–6(a) would require an affirmative answer to that question. Allaire points out that another section of the applicable regulations defines the term "put equivalent position" as "a derivative security position that increases in value as the value of the underlying equity decreases, including, but not limited to, a long put option and a short call option position." 17 C.F.R. § 240.16a–1(h). A party establishes a short call option position by writing a call option. In doing so, the writer obligates him- or herself to sell the security to the holder of the option (who is then in a "long" position with respect to the securities) at the agreed-upon "strike price" whenever the holder demands it, except no later than the date the option expires. The value of the writer's "derivative security position" does indeed "increase[ ] in value as the value of the underlying equity decreases," *id.*, because the likelihood that the writer will be able to pocket the premium the purchaser paid him or her for the right to purchase the shares without the purchaser ever exercising that right increases as the value of the underlying equity decreases.[4] If the option does expire unexercised—presumably because the market price was below the strike price when the purchaser might otherwise have executed it—the writer's obligation to sell the security ceases, terminating his or her put equivalent position. Such an expiration, Allaire urges us to conclude, represents a "liquidation of or decrease in a put equivalent position" and is therefore a "purchase" under Rule 16b–6(a). As a purchase, it must be matched with the set of calls Okumus wrote on Allaire's stock on January 16, 2001, which is a "sale." Allaire argues that there is thus a purchase and a sale sufficient to give rise to liability under section 16(b).

Although this reading of Rule 16b–6(a) is not implausible, it appears to contradict the statutory purpose of holding traders liable only for those transactions in which they can exploit their inside information for their own profit. We have previously held that "the exercise of a fixed-price option is a non-event for 16(b) purposes

---

**4.** By the same token, the writer faces a loss if and when the market price of the underlying security rises above the option's strike price, because he or she will be forced to sell the shares to the purchaser for below market value.

... because the insider by then is already bound by the terms of the option, [so] the potential for abuse of inside information is minimal." *Magma Power*, 136 F.3d at 322. *A fortiori*, when the option is written by the insider (and not canceled), leaving the insider with no control over whether or not it will be exercised, his or her inside information, at least in the usual case, cannot be employed for his or her personal profit. Thus, neither the holder's exercise of the option nor the holder's allowing the option to expire constitutes a transaction by the option's writer.

For this reason, the district court correctly concluded that the references in Rule 16b–6(a) to the "establishment" and "liquidation" of call and put equivalent positions refer not to the expiration of an option but rather to the initial transaction between the writer and the holder. *Allaire Corp.*, 2004 WL 719178, at *3, 2004 U.S. Dist. LEXIS 5576, at *9. Under the district court's view, which we share, section 16(b) covers only the transaction in which the parties agree to the terms of sale, because that is the one in which the writer of the option can be deemed to be using his or her inside information to arrive at the option's terms on a favorable basis. Just as the holder's exercise of a call option is not a "sale" by the writer under Rule 16b–6(a), neither is the expiration of a call option a "purchase" by the writer under that provision.

Allaire concedes that a holder's *exercise* of an option is a "non-event" for the writer, but it attempts to distinguish the exercise of an option from its expiration. While the writer has no control over whether the holder exercises the option, Allaire argues, "the seller (writer) of the option has the choice at any point from the writing of the option *until* the exercise date to close out the position by buying back the option." Appellant's Br. at 15 (emphasis in origi-nal). By the same logic, however, an insider could be held liable under section 16(b) without having been involved in *any* transaction because such a person always has a "choice" as to whether to buy and sell stock within six months. The issue is not what the option writer might have done. It is what he or she in fact did.

IV.  Rule 16b–6(d)

Even if Allaire's interpretation of Rule 16b–6(a) were consistent with the purposes of section 16(b), it cannot be squared with other portions of the SEC regulations governing section 16(b) liability for derivatives. *Cf. United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear . . . .") (citation omitted).

Allaire relies principally on Rule 16b–6(a), but only one subsection of Rule 16b–6 refers explicitly to the legal consequences of the expiration of an option. Rule 16b–6(d) provides in part:

> Upon cancellation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act. The profit shall not exceed the premium received for writing the option.

*Id.* Under this provision, if an insider writes an option that expires unexercised within six months and profits from doing so on account of having been paid by the purchaser for a right to buy shares that the purchaser did not exercise, the writer will be held liable under section 16(b) for the amount the purchaser paid him or her for the option. *See Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305,

309 (2d Cir.1998) ("[U]nder Rule 16b–6(d), any insider who writes a put option on securities of the issuer is liable under Section 16(b) to the extent of any premium received for writing the option if the option is either cancelled or expires unexercised within six months of its writing, an event that is deemed a 'sale' for purposes of Section 16(b).") (citing Rule 16b–6(d)).

Allaire's reading of Rule 16b–6(a) would render this rule, 16b–6(d), superfluous. If the expiration of a call option were a purchase under Rule 16b–6(a), what purpose would it serve to provide, as Rule 16b–6(d) does, that the expiration of an option within six months of its writing triggers liability? Such an event would be covered by Rule 16b–6(a). *Cf. State Street Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir.2003) ("It is well-settled that courts should avoid statutory interpretations that render provisions superfluous . . . .").

Allaire bases its reading of Rule 16b–6(a) in large measure on its definition of a sale as including the "liquidation of or decrease in a call equivalent position." 17 C.F.R. § 240.16b–6(a). But if the SEC had intended Rule 16b–6(a) to govern expirations, the SEC would presumably have used the word "expiration" to do so. Indeed, the explicit reference to "expiration of an option" in Rule 16b–6(d) indicates that the SEC was aware of the potential significance of an option's expiration, suggesting that its omission from Rule 16b–6(a) was likely intentional. *Cf. Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (rejecting government's request to read a provision of the Federal Tort Claims Act that did not contain the words "act or omission" as if it did when other parts of the Act did contain those words, thus proving that "Congress knew how to specify 'act or omission' when it wanted to").

By its terms, Rule 16b–6(d) plainly does not cover the trades Okumus is alleged to have made. This provision directs that the writer of an option may be held liable for any profit derived from the expiration of *that same option* within six months. Here, the January 16 calls Okumus wrote were for a different set of shares than those that expired on December 16. Therefore, those two events do not trigger liability under Rule 16b–6(d).[5]

The SEC has itself lent support to this view. In response to a letter from the law firm of Sullivan & Cromwell requesting guidance as to the applicability of Rule 16b–6 to the expiration of an option more than six months after its writing, the SEC took the position that "the expiration of a call option more than six months following the date on which it was written would be the exempt closing of a derivative security position with respect to the writer in circumstances where no value is given in consideration for the expiration." *Sullivan & Cromwell*, SEC No–Action Letter, 1993 WL 485927, at *3, 1993 SEC No–Act. LEXIS 1100, at *1 (Nov. 19, 1993). It further concluded that "such an expiration *would not be construed as a purchase by the writer*, resulting from the decrease in a put equivalent position pursuant to Rule 16b–6(a), that may be matched with another transaction by the writer pursuant to Rule 16b–6(c)(2)." *Id.*, 1993 WL 485927,

5. Rule 16b–6(c) also appears to undermine Allaire's interpretation. It sets forth the method for calculating an insider's profit from short-swing trade pairs consisting of at least one option transaction. The provision does not provide a method for calculating profit where an option's expiration is one half of the transaction pair in question. If the SEC thought an expiration ordinarily may give rise to insider's liability when paired with any other purchase or sale, why did it not give so much as a hint in Rule 16b–6(c) as to the proper means of calculating the insider's profit?

at \*3, 1993 SEC No–Act. LEXIS 1100, at \*1–\*2 (emphasis added).

The SEC no-action letter does not bind us, but we find it persuasive. *See Mony Group, Inc. v. Highfields Capital Mgmt., L.P.,* 368 F.3d 138, 146 (2d Cir.2004) (noting that no-action letters may be relied upon for their persuasiveness). Here, the letter confirms our view that the writing of an option may be a "transaction" under section 16(b) but that the expiration of an option, when matched against any transaction other than its own writing, is not.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.