**David R. MEEKINS, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**CITY OF NEW YORK, NEW YORK and Iris Weinshall, Commissioner of the New York City Department of Transportation, Defendants.**

No. 06 Civ. 6473(SAS).

United States District Court, S.D. New York.

Nov. 6, 2007.

---

William R. Weinstein, Esq., Sanford Wittels & Heisler, LLP, New York City, for Plaintiff.

Sherill Kurland, Assistant Corporation Counsel, New York City, for Defendants.

## OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge.

### I. INTRODUCTION

David Meekins brings this putative class action on behalf of all disabled persons who hold disability parking permits issued by a United States government entity, but who do not qualify for the New York City Special Vehicle Identification Permit ("Special Vehicle Permit"). Meekins is suing the City of New York ("the City") and Iris Weinshall, former Commissioner of the New York City Department of Transportation, claiming that the City's Special Vehicle Permit policy violates the class's rights under title II of the Americans with Disabilities Act of 1990 ("the ADA"),[1] the Rehabilitation Act of 1973,[2] and section 1983 of title 42 of the United States Code ("section 1983").[3] Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the motion is granted in part and denied in part.

### II. BACKGROUND

The Special Vehicle Permit allows its holder to park at expired meters and in spaces designated only for authorized vehicles.[4] To qualify for this permit, an applicant must have a severe handicap and must live, work, or attend school in New York City.[5]

Meekins, a New Jersey resident, suffers from Type I Neurofibromatosis, a genetic disorder of the nervous system that causes tumors to grow around the nerves.[6] Because of this disorder, Meekins cannot walk long distances and generally depends on a specialized wheelchair for his mobili-

---

1. 42 U.S.C. § 12132 *et seq.*

2. 29 U.S.C. § 794 *et seq.*

3. Count II of Meekins's Complaint also alleges that the City's policy violates New York State law. *See* Complaint ("Compl.") ¶¶ 41–46. Meekins has now withdrawn that claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings at 3 n. 3.

4. *See* Compl. ¶ 5.

5. *See id.* ¶ 10; New York City Charter § 2903(a)(15)(a) (2002).

6. *See* Compl. ¶ 19.

ty.[7] He also uses a customized van in order to travel with his wheelchair.[8]

Meekins regularly travels to New York City to receive medical treatment and to pick up prescriptions at Memorial Sloan–Kettering Cancer Center.[9] He also visits New York City to take advantage of some of its many cultural offerings.[10] Meekins holds a New Jersey State disability parking permit,[11] but because he does not live, work, or attend school in New York City, he does not qualify for the City's Special Vehicle Permit. Without a Special Vehicle Permit, Meekins often must pay for private parking. Even then, he encounters difficulties because his customized van is so large that it does not fit into the entrances of some indoor parking garages.[12] And when a private parking facility can accommodate his van, Meekins often pays an extraordinarily high parking fee due to the van's size.[13]

Because of these difficulties, Meekins has resorted to parking illegally and has received parking tickets.[14] Meekins contends that if he had a Special Vehicle Permit, he would be able to find a suitable parking space and would not have received any parking tickets.[15]

The putative class includes all disabled persons who have disability parking permits issued by a United States government entity, but who do not qualify for the New York City Special Vehicle Permit.[16]

## III. APPLICABLE LAW

### A. Rule 12(c) Motion for Judgment on the Pleadings

A Rule 12(c) motion is governed by the same pleading standard as a Rule 12(b)(6) motion.[17] "Federal Rule of Civil Procedure 8(a)(2) requires ... 'a short and plain statement of the claim showing that the pleader is entitled to relief.' "[18] When deciding a defendant's motion to dismiss under Rule 12(b)(6), courts must "accept as true all of the factual allegations contained in the complaint"[19] and "draw all reasonable inferences in plaintiff's favor."[20] Likewise, when deciding a motion for judgment on the pleadings, a court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."[21]

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausi-

---

7. *See id.* ¶ 23.

8. *See id.* ¶ 24.

9. *See id.* ¶ 22.

10. *See id.* ¶ 29.

11. *See id.* ¶ 26.

12. *See id.* ¶ 25.

13. *See id.* ¶ 29.

14. *See id.* ¶ 27.

15. *See id.* ¶ 30.

16. *See id.* ¶ 12.

17. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006) (citing *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)).

18. *Erickson v. Pardus*, —— U.S. ——, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting Fed.R.Civ.P. 8(a)(2)).

19. *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

20. *Ofori–Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir.2006).

21. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998)).

bility."[22] Although the complaint need not provide "detailed factual allegations,"[23] it must "amplify a claim with some factual allegations ... to render the claim *plausible.*"[24] The test is no longer whether there is " 'no set of facts [that plaintiff could prove] which would entitle him to relief.' "[25] Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' "[26]

Although this Court must take the plaintiff's allegations as true, "the claim may still fail as a matter of law ... if the claim is not legally feasible."[27] In addition, "bald assertions and conclusions of law will not suffice."[28]

### B. ADA and Rehabilitation Act Claims

In Count I of the Complaint, Meekins asserts that the City's policy violates both title II of the ADA[29] and the Rehabilitation Act.[30] These two statutes are not identical, but they are so similar that, "unless one of those subtle distinctions [between the ADA and the Rehabilitation Act] comes into play, we treat claims under those statutes identically."[31] Because none of these distinctions is relevant to this case, the Court will consider the statutes together.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[32] Plaintiffs pleading an ADA claim must show: (1) that "they are qualified individuals with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities."[33]

#### 1. Discrimination

The discrimination element can take any of three forms: 1) intentional discrimination; 2) disparate impact; or 3) failure to

**22.** *Twombly,* 127 S.Ct. at 1970.

**23.** *Id.* at 1964. *See also ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 n. 2 (2d Cir.2007) (applying the standard of plausibility outside *Twombly'* s anti-trust context).

**24.** *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after the events of September 11, 2001).

**25.** *Twombly,* 127 S.Ct. at 1968 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**26.** *ATSI Commc'ns,* 493 F.3d at 98 (quoting *Twombly,* 127 S.Ct. at 1965).

**27.** *Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006).

**28.** *Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp.,* 309 F.3d 71, 74 (2d Cir. 2002) (quotation omitted).

**29.** 42 U.S.C. § 12132 *et seq.*

**30.** 29 U.S.C. § 194 *et seq.*

**31.** *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003) (citing *Weixel v. Board of Educ.,* 287 F.3d 138, 146 n. 6 (2d Cir.2002); *Rodriguez v. City of New York,* 197 F.3d 611, 614 (2d Cir.1999); *Cercpac v. Health & Hosps. Corp.,* 147 F.3d 165, 167 (2d Cir. 1998)).

**32.** 42 U.S.C. § 12132.

**33.** *Henrietta D.,* 331 F.3d at 272 (citing *Doe v. Pfrommer,* 148 F.3d 73, 82(2d Cir.1998)).

make a reasonable accommodation.[34] Meekins asserts that the City has failed to make reasonable accommodations for disabled persons who do not qualify for the Special Vehicle Permit.[35] When assessing government entities' responsibility under the ADA to furnish reasonable accommodations for disabled persons, courts have drawn upon the language of section 41.53 of title 28 of the Code of Federal Regulations, a federal regulation implementing section 504 of the Rehabilitation Act.[36] That regulation requires covered entities to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." [37]

■ The reasonable accommodation requirement thus places an affirmative burden on government entities to provide disabled persons with access to government services, but a government entity will be relieved of that burden if it can show that a proposed accommodation would be unduly difficult to implement.[38] Consequently, to plead a failure to make a reasonable accommodation, a plaintiff must assert that disabled individuals lack access to a given government resource and suggest a plausible method for remedying that lack of access. A plausible accommodation is one "the costs of which, facially, do not clearly exceed its benefits." [39]

## 2. Causation

If a court finds discrimination under the ADA, it must assess whether that discrimination is "by reason of plaintiffs' disabilities." [40] The Second Circuit has held that, because the ADA is remedial legislation and because "remedial legislation should be construed broadly to effectuate its purposes," the causation standard under the ADA requires only that the disability be a "substantial cause of the exclusion or denial" at issue.[41]

## C. Exhaustion of Remedies

The City argues that because Meekins has not exhausted all available administrative remedies for obtaining a Special Vehicle Permit, this Court must dismiss the Complaint. The doctrine of exhaustion of administrative remedies rests on the principle " 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " [42] "It is well settled that timely exhaustion of plan remedies is a prerequisite to suit in federal court and that, absent appropriate equitable considerations, court action is barred absent such exhaustion." [43] A claimant is "required to

---

**34.** *See Tsombanidis v. West Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir.2003).

**35.** *See* Comply ¶¶ 16(a), 32–34.

**36.** *See Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 606 n. 16, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).

**37.** 28 C.F.R. § 41.53 (2002).

**38.** *See Powell v. National Bd. of Medical Examiners,* 364 F.3d 79, 85 (2d Cir.2004).

**39.** *Borkowski v. Valley Cent. School Dist.,* 63 F.3d 131, 138 (2d Cir.1995).

**40.** *Henrietta D.,* 331 F.3d at 272.

**41.** *Id.* at 279, 291 (citation omitted).

**42.** *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 592 (2d Cir.1993) (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)).

**43.** *Sanfilippo v. Provident Life and Cas. Ins. Co.,* 178 F.Supp.2d 450, 458 (S.D.N.Y.2002). *Accord Denton v. First Nat'l Bank of Waco, Tex.,* 765 F.2d 1295, 1300 (5th Cir.1985).

exhaust even if she [i]s ignorant of the proper claims procedure." [44] If a plaintiff fails to allege that she has exhausted administrative remedies, the claim must be dismissed. [45] Failure to exhaust remedies may be excused on the grounds of futility "only 'where claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile.' " [46]

### D. Section 1983 Claims

■ Meekins further alleges that the City's Special Vehicle Permit policy violates his .constitutional rights under the Commerce Clause [47] and the Privileges and Immunities Clause of Article IV [48] of the United States Constitution, and brings claims for these violations pursuant to section 1983. [49] In order to maintain a section 1983 action, a plaintiff must allege: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct complained of deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. [50]

### 1. Commerce Clause

■ Meekins alleges that the Special Vehicle Permit policy violates the Com-

merce Clause of the Constitution because it discriminates against interstate commerce, [51] thus raising a "dormant" Commerce Clause claim. "The fundamental objective of the *dormant* Commerce Clause is to 'preserv[e] a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors.' " [52] When assessing such a claim, courts first determine whether the challenged law "clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce." [53] A law that clearly discriminates against interstate commerce can survive a dormant Commerce Clause attack only if it is " 'demonstrably justified by a valid factor unrelated to economic protectionism,' " [54] whereas a law that only incidentally burdens interstate commerce is subject to a more permissive balancing test. [55]

The Second Circuit has outlined three ways in which a law can be clearly discriminatory under the dormant Commerce Clause analysis: (1) "by discriminating against interstate commerce on its face;" (2) "by harboring a discriminatory purpose;" and (3) "by discriminating in its

---

**44.** *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 134 (2d Cir.2001).

**45.** *See Benaim v. HSBC Bank USA*, 94 F.Supp.2d 518, 519 (S.D.N.Y.2000).

**46.** *Davenport*, 249 F.3d at 133 (quoting *Kennedy*, 989 F.2d at 594).

**47.** U.S. Const. Art. I, § 8, cl. 3.

**48.** U.S. Const. Art. IV, § 2.

**49.** *See* Compl. ¶¶ 47–52.

**50.** *See Hayut v. State Univ. of New York*, 352 F.3d 733, 743–44 (2d Cir.2003) (quotation omitted).

**51.** *See* Compl. ¶ 48.

**52.** *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 47 (2d Cir.2007) (quoting *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 208 (2d Cir.2003) (quoting *General Motors Corp. v. Tracy*, 519 U.S. 278, 299, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997))).

**53.** *Id.* (citing *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 217–18 (2d Cir.2004)).

**54.** *Id.* (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992)).

**55.** *See id.*

effect." [56]

## 2. Privileges and Immunities Clause

 The purpose of the Privileges and Immunities Clause is to "prevent[ ] a State from discriminating against citizens of other States in favor of its own." [57] Courts evaluating claims under the Privileges and Immunities Clause must determine: "(1) whether a State has, in fact, discriminated against out-of-staters with regard to the privileges and immunities it accords its own citizens, and (2) if so, whether there is sufficient justification for the discrimination." [58] To satisfy the sufficient justification requirement, a state entity must show that " '(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.' " [59]

## IV. DISCUSSION

### A. ADA and Rehabilitation Act Claims

Meekins's Complaint states a claim under the ADA. It asserts that he is a qualified individual within the meaning of title II of the ADA. [60] The City, along with the Commissioner of the Department of Transportation, is clearly a "public entity" within the meaning of title II of the ADA and is therefore subject to title II's requirements. [61] Meekins has pled both that the City is discriminating against him and that this discrimination is based on his disability. [62]

### 1. Discrimination

 In his Complaint, Meekins claims limited access to parking in New York City and, in turn, limited access to some of New York City's institutions, including the Memorial Sloan–Kettering Cancer Center and the Museum of Modern Art. [63] The Complaint proposes that the City could accommodate Meekins by allowing him and other members of the class to park for a limited amount of time in the spaces made available to Special Vehicle Permit holders. [64] The City's ability to implement this proposal without incurring undue costs, however, is an issue that cannot be determined on a motion to dismiss. Accordingly, plaintiff has successfully pled discrimination under a reasonable accommodation theory. [65]

---

56. *Id.* at 48.

57. *Baldwin v. Fish and Game Comm'n*, 436 U.S. 371, 382, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978) (quoting *Hague v. CIO*, 307 U.S. 496, 511, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)).

58. *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 94 (2d Cir.2003) (citing *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 218–22, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984)).

59. *Barnard v. Thorstenn*, 489 U.S. 546, 552, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989) (quoting *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985)).

60. *See* Compl. ¶ 34.

61. *Green v. City of New York*, 465 F.3d 65, 76 (2d Cir.2006).

62. *See* Compl. ¶ 4.

63. *See id.* ¶¶ 28, 29.

64. *See id.* ¶¶ 28, 30.

65. The Second Circuit has explained that a plaintiff can sustain a reasonable accommodation claim by suggesting a " 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.' " If a " 'plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant.' " *Henrietta D.*, 331 F.3d at 280 (quoting *Borkowski*, 63 F.3d at 138).

### 2. Causation

■ Meekins has alleged that his disability is a substantial cause of the difficulties he encounters when attempting to access New York's medical and cultural resources. Because of his disability, Meekins has difficulty putting coins in parking meters and visiting his doctors within the maximum time period allowed for metered parking spaces.[66] Meekins's disability also forces him to use a wheelchair, which in turn requires that he travel in an extraordinarily large customized van that does not fit into some of the indoor parking garages in New York City.[67] The City argues that it is not discriminating on the basis of disability because it provides parking to disabled individuals who live, work, or study in New York City and therefore qualify for the Special Vehicle Permit.[68] This argument, however, ignores the fact that Meekins's disability is clearly a cause of his lack of access to City services, programs, and institutions.[69] Accordingly, Meekins has sufficiently pled that his disability is a "substantial cause of [his] exclusion" from City services, programs, and institutions.[70] Meekins has

stated reasonable accommodation claims under both the ADA and the Rehabilitation Act.

### B. Exhaustion of Remedies

■ There is no question that had Meekins applied for a Special Vehicle Permit the City would have rejected his request. Section 2903(a)(15)(a) of the New York City Charter provides that Special Vehicle Permits are to be issued to "a New York city resident who requires the use of a private automobile for transportation and to a non-resident who requires the use of a private automobile for transportation to a school in which such applicant is enrolled or to a place of employment."[71] Meekins is not a New York City resident and he neither works nor attends school in New York City. Because it is beyond cavil that Meekins cannot satisfy the requirements set forth in the City Charter, applying for the Special Vehicle Permit would be futile. Thus, plaintiff is deemed to have exhausted available remedies.

### C. Section 1983 Claims

As an initial matter, the requirement that defendants sued under section 1983

---

**66.** *See* Compl. ¶ 27.

**67.** *See id.* ¶ 29.

**68.** *See* Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings at 9.

**69.** Plaintiff does not need to show discrimination based solely on disability to sustain a claim under the ADA. In *Olmstead*, the challenged state action was the state of Georgia's decision to place mentally disabled patients in isolated institutions instead of community-based programs. The State argued that any discrimination in this case was by reason of limited state funding, not by reason of the plaintiffs' disabilities. The Supreme Court rejected the state's argument, insisting that the plaintiffs' disabilities were a cause of their exclusion: "In order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish

participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice." *Olmstead*, 527 U.S. at 601, 119 S.Ct. 2176.

**70.** *Henrietta D.*, 331 F.3d at 291 (employing a broader "substantial cause" analysis regarding the ADA and Rehabilitation Act and holding that a plaintiff "suing under the ADA or Rehabilitation Act may show that he or she has been excluded from or denied the benefits of a public entity's services or programs by reason of such disability even if there are other contributory causes for the exclusion or denial, as long as ... the disability was a substantial cause of the exclusion or denial").

**71.** New York City Charter § 2903(a)(15)(a).

must act under color of state law is met. As the Second Circuit recently explained, the Supreme Court's decision in *Monell v. Department of Social Services* extended section 1983 "liability to a municipal organization where that organization's ... policies ... led to an independent constitutional violation." [72] Thus, the only remaining question is whether the City's Special Vehicle Permit program deprived Meekins of a constitutional right, privilege or immunity.

**1. Commerce Clause**

■ Meekins alleges that the City's Special Vehicle Permit program violates the dormant Commerce Clause because it is discriminatory "in its practical effect." [73] Even if the Special Vehicle Permit program is clearly discriminatory, it does not violate the dormant Commerce Clause. The City has compelling reasons for favoring those who live, work, or attend school in New York City over those who do not. The Second Circuit, evaluating the Special Vehicle Permit program in the context of a Privileges and Immunities Clause claim, explained:

> The limited number of on-street parking spaces justifies the regulatory scheme established by the City. It is not irrational to give the scarcest parking spaces to those who are severely handi-

capped and who live or conduct business in the City, while granting others, who are either less severely disabled or whose need for parking is less frequently pressing, access to parking that while still preferential, is not in as short supply.[74]

In essence, the Second Circuit has already held that the Special Vehicle Permit program is "demonstrably justified by a valid factor unrelated to economic protectionism." [75] Accordingly, Meekins's Commerce Clause claim is dismissed.

**2. Privileges and Immunities Clause**

In an earlier lawsuit involving the City's Special Vehicle Permit program, *Lai v. New York City Government*, the Second Circuit expressly declined to reach the issue of whether parking could constitute a fundamental right so as to fall within the protection of the Privileges and Immunities Clause.[76] Instead, the *Lai* Court considered the City's justifications for the Special Vehicle Permit program and concluded that "[i]t is enough to note that the City's decision to give special parking privileges to those with the most pressing needs—severely handicapped City residents and nonresidents who work or study in the City—is reasonable and that [the City's parking system] substantially relates to the City's policy goals." [77]

---

**72.** *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) (citing *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

**73.** Compl. ¶ 48.

**74.** *Lai v. New York City Gov't,* 163 F.3d 729, 731 (2d Cir.1998) (affirming the lower court's grant of summary judgment for the City on claims arising out of the ADA, the Privileges and Immunities Clause, and the Equal Protection Clause of the Constitution). While *Lai* controls the analysis under the Privileges and Immunities Clause, it does not reflect current

law regarding the ADA because it was decided prior to the Second Circuit's expansion of the causation analysis in *Henrietta D.*

**75.** *Town of Southold,* 477 F.3d at 47 (citing *Wyoming v. Oklahoma,* 502 U.S. at 454, 112 S.Ct. 789).

**76.** *See Lai,* 163 F.3d at 731 ("it is not necessary in this case to say that special parking for the handicapped can *never* qualify as a fundamental privilege protected by the Privileges and Immunities Clause").

**77.** *Id.*

The *Lai* Court evaluated the Special Vehicle Permit program at the summary judgment stage. Although the instant decision addresses a motion for judgment on the pleadings, the City's policies have not changed in any way relevant to the Privileges and Immunities Clause since the *Lai* decision. As a result, the *Lai* Court's Privileges and Immunities Clause analysis applies to the instant case. The City's Special Vehicle Permit program satisfies the "sufficient justification" test under the Privileges and Immunities Clause because the City " 'has a substantial reason for the difference in treatment' " and " 'the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.' " [78] Thus, plaintiff's Privileges and Immunities Clause claim must be dismissed.

## V. CONCLUSION

For the reasons discussed above, defendants' motion for judgment on the pleadings is granted with respect to plaintiff's section 1983 claims; it is denied with respect to plaintiff's ADA and Rehabilitation Act claims. The Clerk of the Court is directed to close this motion [Document # 9]. A conference is scheduled for November 19, 2007, at 4:30 p.m. in Courtroom 15C.

SO ORDERED.

---

**78.** *Barnard*, 489 U.S. at 552, 109 S.Ct. 1294 (quoting *Piper*, 470 U.S. at 284, 105 S.Ct. 1272).