23-7635
*In Re: Frasers Grp. PLC*

In the
United States Court of Appeals
for the Second Circuit

August Term 2023
Argued: January 23, 2024
Decided: March 4, 2024

No. 23-7635

FRASERS GROUP PLC,
*Applicant-Appellant*,
v.
MORGAN STANLEY, JAMES GORMAN,
*Respondents-Appellees*.

Appeal from the United States District Court
for the Southern District of New York
No. 23-348, Paul A. Engelmayer,
District Court Judge.

Before: JACOBS, PARKER, and PÉREZ, *Circuit Judges*.

On appeal from an order of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

This appeal arises from a dispute over an Application for Judicial Assistance under 28 U.S.C. § 1782 (the "Application"). Applicant-Appellant Frasers Group PLC ("Frasers") seeks documentary and testimonial evidence from Respondent-Appellee James Patrick Gorman, the former Chief Executive Officer and now Executive Chair of Respondent-Appellee Morgan Stanley, for use in a lawsuit commenced in the United Kingdom in the High Court of Justice in the Business and Property Courts of England and Wales.

Frasers appeals from an order entered by the district court denying the Application in its entirety. The district court analyzed the request for discovery under the factors established by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), that district courts consider when determining whether to grant domestic discovery for use in foreign proceedings under 28 U.S.C. § 1782(a). It ultimately concluded that the first *Intel* factor—whether "the person from whom discovery is sought is a participant in the foreign proceeding"—and the fourth *Intel* factor—whether the discovery request is "unduly intrusive or burdensome"—weighed against granting the Application. *Intel*, 542 U.S. at 264–65. This case asks us to determine whether the district court abused its discretion in denying the Application. We hold that it did not and **AFFIRM**.

JOSEPH B. ROME, Sequor Law, PA, Miami, FL (Douglas A. Kellner, Kellner Herlihy Getty & Friedman LLP, New York, NY, *on the brief*), *for Applicant-Appellant*.

JEFF E. BUTLER (John P. Alexander, *on the brief*), Clifford Chance US LLP, New York, NY, *for Respondents-Appellees*.

MYRNA PÉREZ, *Circuit Judge*:

This appeal arises from a dispute over the propriety of an Application for Judicial Assistance under 28 U.S.C. § 1782 (the "Application"), which permits a district court to grant domestic discovery for use in foreign proceedings. Applicant-Appellant Frasers Group PLC ("Frasers") seeks documentary and testimonial evidence from Respondent-Appellee James Patrick Gorman, the former Chief Executive Officer and now Executive Chair of Respondent-Appellee Morgan Stanley,[1] for use in a lawsuit commenced in the United Kingdom in the High Court of Justice in the Business and Property Courts of England and Wales (the "English Proceedings"). District courts consider the four discretionary *Intel*

---

[1] We take judicial notice that, during the pendency of this appeal, Gorman retired as the Chief Executive Officer of Morgan Stanley but remains the Executive Chairman of its board. *See United States v. Nieves*, 58 F.4th 623, 634 (2d Cir. 2023).

factors when determining whether to grant a § 1782 application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). On appeal, we must determine whether the district court abused its discretion by finding that two of the four *Intel* factors weighed against granting the Application. For the reasons set forth below, we conclude that it did not. Thus, we AFFIRM the district court's order denying the Application.

## I. <u>Background</u>

In 2019, Frasers—a British retailer group—entered into various options transactions with Saxo Bank A/S ("Saxo Bank") related to shares of the fashion company Hugo Boss. From mid-April 2021 to May 2021, Frasers sold an increasing number of Boss call options.[2] Concurrently, Saxo Bank entered into trades with Morgan Stanley & Co. International PLC ("MSIP"), an English company and a subsidiary of Morgan Stanley, in relation to the Boss call options.

On May 25, 2021, MSIP issued a margin call to Saxo Bank (the "Margin Call"). The net amount of the Margin Call was $915 million. On May 26, 2021, Saxo Bank paid $400 million in part satisfaction of the Margin Call. That day, Saxo

---

[2] A call option, a type of derivative securities, "gives its holder the right to purchase shares of an equity from the option seller at a specified strike price." *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 n.3 (2d Cir. 2006). If the price of that security rises, the buyer profits by buying it at the agreed price and reselling it on the open market at the higher market price. *See id.* at 251 & n.4.

Bank issued its own, cash-only margin call to Frasers in respect to the Boss call options with an obligation to pay "immediately" (the "Passed-On Margin Call"). App'x at 10. Frasers objected to the Passed-On Margin Call and unsuccessfully engaged in negotiations with MSIP and Saxo Bank.

On June 28, 2021, Frasers commenced the English Proceedings for damages against Saxo Bank and MSIP.

On September 20, 2023, Frasers submitted an Application for Judicial Assistance under 28 U.S.C. § 1782, seeking to obtain documentary and testimonial evidence from Gorman for use in the English Proceedings. Specifically, Frasers sought to depose Gorman and to subpoena certain documents related to the Margin Call. App'x at 30–31.

Frasers argued before the district court that the Application supports its allegations in the English Proceedings. Further, Frasers asserted that the documents and testimony that it sought would help reveal the extent, if any, of Gorman's knowledge of the Margin Call; his involvement, if any, in the decisions to impose and maintain the Margin Call; and whether the decision to impose and maintain the Margin Call was guided by unwritten policies put in place by Morgan Stanley's leadership. After holding a telephonic conference regarding the

5

Application, the district court encouraged the parties to meet and confer, but negotiations failed.

On October 19, 2023, the district court entered an order denying the Application in its entirety. Frasers timely filed its notice of appeal.

**II. <u>Discussion</u>**

28 U.S.C. § 1782(a) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.

Section 1782 allows a district court to order discovery if:

> (1) . . . the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) . . . the discovery [is] for use in a proceeding before a foreign tribunal, and (3) . . . the application [is] made by a foreign or international tribunal or any interested person.

*Esses v. Hanania* (*In re Esses*), 101 F.3d 873, 875 (2d Cir. 1996) (internal quotation marks and citation omitted).

The parties do not dispute that the Application meets § 1782's statutory requirements. Because these statutory requirements have been met, the district court has the discretion to grant or deny the Application. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242 (2d Cir. 2018) ("Section 1782 states

6

that a court '*may* order' such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary.").

In *Intel*, the Supreme Court established the discretionary factors that district courts should consider when determining whether to grant domestic discovery for use in foreign proceedings under 28 U.S.C. § 1782(a). 542 U.S. 241. Those four factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome." *Id.* at 264–65.

We review a district court's application of the *Intel* factors for abuse of discretion. *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 147 (2d Cir. 2022). An abuse of discretion occurs if the district court "(1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that . . . 'cannot be

located within the range of permissible decisions.'" *Id.* (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "The *Intel* factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel*, 895 F.3d at 245.

In denying Frasers's Application, the district court found that the second and third *Intel* factors "moderately favor[ed] granting" the Application, but that the first and fourth *Intel* factors weighed heavily against relief. App'x at 215. On appeal, Frasers challenges the district court's findings as to the first and fourth *Intel* factors and contends that the district court arrived at this conclusion by improperly reading an exhaustion requirement into both factors. We disagree and conclude that the district court did not abuse its discretion in analyzing the *Intel* factors.

**A. The First *Intel* Factor**

The district court did not err in finding that the first *Intel* factor weighed against relief as to the production of documents because the documents sought

8

were obtainable through discovery from MSIP in the English Proceedings.[3]

Contrary to Frasers's assertions, the district court did not impose an exhaustion requirement on Frasers. Although the district court considered the availability of the documents in the English Proceedings, it did not treat Frasers's failure to first pursue discovery of these documents in the English Proceedings as a categorical bar.

In *Intel*, the Supreme Court described the first factor in the following way:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

542 U.S. at 264. Importantly, we have on multiple occasions found that the first *Intel* factor weighed against relief even where the discovery target was not a party to the foreign proceeding. For example, in *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, we concluded that the first *Intel* factor counseled against discovery against a third-party law firm where the petitioners "for all intents and purposes . . . are

---

[3] The district court found that the first *Intel* factor was neutral as to Frasers's request to depose Gorman. App'x at 216.

seeking discovery from DT, their opponent in the German litigation." 376 F.3d 79, 85 (2d Cir. 2004). We stated that "because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Intel*, 542 U.S. at 264); *see also Kiobel*, 895 F.3d at 245 (applying the first *Intel* factor against a § 1782 applicant "when the real party from whom documents are sought (here, Shell) is involved in [the] foreign proceedings").

As in *Schmitz*, Frasers "for all intents and purposes" seeks discovery from MSIP, its opponent in the English Proceedings. 376 F.3d at 85. And because MSIP is a participant in the English Proceedings and "subject to [the foreign] court['s] jurisdiction, [Frasers]'s need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Intel*, 542 U.S. at 264). Although Gorman is not a party to the English Proceedings, Appellees made two concessions: first, that MSIP would treat all documents sought in the English Proceedings that Gorman may hold on his personal devices or in his homes as within MSIP's custody; and second, that MSIP would not object in the English Proceedings to the disclosure of Morgan Stanley

documents on the grounds that they were located in the United States. *See* App'x at 216. These concessions indicate that Frasers could obtain these documents in the English Proceedings, and Frasers did not meaningfully challenge this. Nor is there any indication that the documents sought are "unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

Accordingly, there was no abuse of discretion in finding that the first *Intel* factor weighed against granting the Application.

**B. The Fourth *Intel* Factor**

The district court also did not abuse its discretion in concluding that the fourth *Intel* factor weighed against relief because the discovery request was "unduly intrusive or burdensome." *Id.* at 265 (holding that "unduly intrusive or burdensome requests may be rejected or trimmed"). "[T]he ultimate question of burdensomeness is within the district court's discretion to decide," *Fed. Republic of Nigeria*, 27 F.4th at 159, and burdensomeness is assessed "by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure," *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015); *see also Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171, 179 (2d Cir. 2002) ("Limits may be proscribed on [§ 1782] discovery or an existing order may be quashed under Rule 26(c)."). Rule 26 contains general

11

provisions governing discovery and provides, in relevant part, that a "court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added); *see also Metallgesellschaft AG v. Hodapp* (*In re Metallgesellschaft*), 121 F.3d 77, 79 (2d Cir. 1997) ("[I]f it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative [under Rule 26] . . . or was brought vexatiously . . . .").

    As with the first *Intel* factor, and contrary to Frasers's assertions, the district court did not improperly read an exhaustion or "quasi-exhaustion" requirement into its analysis of the fourth *Intel* factor. *See Malev Hungarian Airlines v. United Techs. Int'l Inc.* (*In re Malev Hungarian Airlines*), 964 F.2d 97, 100 (2d Cir. 1992). In *In re Malev Hungarian Airlines*, we reversed a district court's denial of a § 1782 application when it imposed a condition that the applicant "should have first sought the requested discovery from the [foreign] court." *Id.* The district court here did not impose such a condition; rather, it considered the possibility that the

12

applicant could obtain the discovery in the foreign proceedings along with other factors, including that pursuing discovery in the foreign court would have been more convenient—an approach consistent with "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302; *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring a court to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). And with respect to Frasers's request for Gorman's testimony, the district court not only weighed the time commitment required against his competing obligations as the Chief Executive Officer of Morgan Stanley, but also found that Gorman's testimony bore little relevance to Frasers's claims. Thus, the district court also did not abuse its discretion in finding that the fourth *Intel* factor weighed against granting the Application.

**III.** **Conclusion**

We have considered Frasers's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order of the district court.